FRED L. MARKEY & others, trustees, & others *vs.* JAMES P. SMITH & others, trustees, & others.

Essex.     April 4, ˙5, 1938. — July 1, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Landlord and Tenant*, Construction of lease, Termination of lease, Entry for breach of condition, Waiver of breach, Title of landlord. *Deed*, Condition, Determinable estate. *Estoppel. Waiver. Notice.*

Statement by Cox, J., of rules of construction applicable in determining whether an interest in land is subject to a conditional limitation or to a condition subsequent.

A lease of land at Salisbury Beach requiring the lessee to operate thereon a so called "Old Mill" and stating that it would be "null and void if said lessee shall fail for a period of thirty days during the Beach season . . . of any year to operate said 'Old Mill' " and giving the lessor a right of reëntry without notice or demand if the lessee failed "to keep and perform any conditions or agreements" therein, in view of all its provisions and the applicable circumstances, was construed to create an estate subject to a condition subsequent.

By accepting a lease of land for a certain term from individuals stated in the lease to be trustees of a voluntary association formed under a recorded declaration of trust, the lessee was estopped to deny the authority of the trustees as lessors during the entire term although by the provisions of the recorded declaration the trust was not to continue so long.

Acceptance by a lessor from the lessee of the amount of a tax assessed upon a building on the leased premises which was stated in the lease to be property of the lessee and was regarded by the parties as not part of the leased premises did not require a finding that the lessor had waived previous breaches by the lessee of other covenants, including a covenant to pay taxes on the land.

An entry upon land by a lessor for breach by the lessee of a condition subsequent under a provision for a right of reëntry without notice or demand was not rendered ineffectual by the fact that the lessor gave to a sublessee a notice of reëntry specifying as a ground therefor a breach which he had waived, the notice, even if the lessor had been bound by its recitals, also stating in general terms that the reëntry was under the right to reënter upon failure to perform "any conditions or agreements."

BILL IN EQUITY, filed in the Superior Court on May 10, 1935, and afterwards amended, seeking in substance to have determined rights of the parties respecting a building on the northeast corner of lot 457 referred to in the opinion, the building being variously referred to in certain leases and the pleadings and the opinion as a "restaurant" and a "store" and "restaurant or store" and described in the amended bill as "not permanently affixed thereto, but . . . built on posts and . . . readily removable," title to the building, free of a lease, being claimed by the defendants by reason of breach of condition of the lease and of a reëntry after breach.

By order of *Donnelly*, J., a master's report was confirmed and a final decree entered dismissing the bill and directing the plaintiffs, trustees under the will of Ralph Pratt, to pay the defendants, trustees of the Salisbury Beach Asso-

ciates, $4,085 for rent from June 1, 1931, to April 1, 1935, with interest and costs; and the plaintiff, Salisbury Beach Attraction Company, to pay the defendants $4,336.36 for rent with interest and costs. The trustees under the will of Ralph Pratt, the Salisbury Beach Attraction Company, and the trustees of the Salisbury Beach Associates appealed.

*J. A. Donovan*, (*J. M. Hargedon* with him,) for the plaintiffs, trustees under the will of Pratt, and the Salisbury Beach Attraction Company.

*E. R. Hale*, (*G. Bolton & John J. Sullivan* with him,) for the defendants, trustees of the Salisbury Beach Associates.

Cox, J. This is a bill in equity filed on May 10, 1935, by the Salisbury Beach Attraction Company, lessee, the trustees under the will of Ralph Pratt, and the Dodgem Corporation against the trustees of the Salisbury Beach Associates, lessors, seeking to enjoin the latter from interfering with the occupation, or the collection of rents from certain tenants named as defendants, of the building which is located on a portion of the leased premises. The plaintiffs' bill, by amendment, in substance seeks to have the ownership of this building determined. The answer of the defendant lessors sets up a counterclaim for rent allegedly due by the terms of the lease. The case was referred to a master whose report was confirmed by an interlocutory decree. All parties except the defendant tenants have appealed from the interlocutory and final decrees.

The master finds that in 1914 the Salisbury Beach Associates, hereinafter referred to as the Associates, a voluntary association under a declaration of trust dated April 25, 1911, and recorded with the Essex south district registry of deeds, leased to the plaintiff Salisbury Beach Attraction Company, a corporation, hereinafter referred to as the Attraction Company, a lot of land at Salisbury Beach described as lot 457 for ten years from May 1, 1914. This lease was cancelled in 1922 by mutual consent, and on May 1, 1922, a new lease was entered into by the same parties, covering the northeastern corner of lot 457 "on which is now located the restaurant building of the lessee, and that portion of the westerly side of said lot 457 on which

the 'Old Mill' now stands" and several other lots. The new lease contained the following provisions: "To Hold for the term of fifteen (15) years . . . yielding and paying therefor as rent $12\frac{1}{2}\%$ of the gross receipts from said 'Old Mill', or from any other attractions or concessions that the lessors may permit to be operated thereon during the term of this lease. It is further understood and agreed that said premises described herein are leased for the sole purpose of operating an 'Old Mill' which was built in 1921 on the lots described herein and on a part of Lot 498 owned by Ralph Pratt, and a restaurant or store, and that this lease shall be null and void if said Lessee shall fail for a period of thirty days during the Beach season from May 1st to September 15th of any year to operate said 'Old Mill' . . . And said Lessee promises to pay also as additional rent all taxes and assessments whatsoever to which the premises or any part thereof may become liable during said term . . . . the Lessors may enter . . . to expel the lessee without any notice or demand if he shall fail to pay the rent and taxes as aforesaid, or fail to keep and perform any conditions or agreements herein written on his part to be kept and performed." On June 1, 1922, the Attraction Company leased to Ralph Pratt "that part of lot 457 . . . on which a building used as a restaurant now stands . . . being the northeast corner of said lot . . . ," at a rental of $1 a year, for a period of fourteen years. Pratt died in 1924. Trustees under his will joined as parties plaintiff. From May 31 to July 3, 1926, the "Old Mill" was closed with the consent of the Associates and for the purpose of installing a water chute or plunge. On June 6, 1927, the front part of it was demolished to make room for a "Foot-Ball Ride." In May, 1928, the remainder of the "Old Mill" was torn down, the "Foot-Ball Ride" was discontinued, and a "Custer Ride" was installed and operated until September, 1930. These changes and installations were made with the consent and approval of the Associates. Since 1930 the Attraction Company has not operated any attraction on the "Old Mill" site. No rent has been paid by the Attraction Company to the Associates under the

lease since 1924.   Taxes on the building in question, which is located on the northeast corner of lot 457, were paid to the Associates by Pratt or the trustees under his will, up to and including 1933.   This building is described in the lease as "the restaurant building of the Lessee."   No other taxes have been paid since 1922.   On April 1, 1935, in accordance with a vote of the Associates, an entry was made on the premises and possession taken.   Notice of this entry was given to "the Estate of Ralph Pratt" as hereinafter appears.   By agreement between the Associates and the trustees under the Pratt will, the rent of the stores in the building in question has been held jointly.   There was collected $980 for the year 1934, and $1,375 for 1935.   An additional $100 was paid to the Associates in 1935.   The plaintiffs' bill relates only to the northeast corner of lot 457, the building which is located thereon and the rent derived therefrom.

The master evidently instructed himself that the clause in the lease of May 1, 1922, from the Associates to the Attraction Company which reads: "and that this lease shall be null and void if said Lessee shall fail for a period of thirty days during the Beach season from May 1st to September 15th of any year to operate said 'Old Mill,'" is a conditional limitation, as contended for by the defendants, rather than a condition subsequent as urged by the plaintiffs.   The earlier cases laid considerable emphasis on the words used in an instrument of conveyance in determining whether a condition subsequent or a conditional limitation was created.   "The usual and proper technical words by which such an estate [conditional] is granted by deed are, 'provided,' 'so as' or 'on condition.' . . . So a condition in a deed may be created by the use of the words '*si*' [if], or '*quod si contingat*' [that if it happens], and the like, if a clause of forfeiture or reëntry be added." *Rawson* v. *School District in Uxbridge,* 7 Allen, 125, 128. *Fifty Associates* v. *Howland,* 11 Met. 99.   *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612.   *Chapin* v. *Harris,* 8 Allen, 594, 596.   *Gray* v. *Blanchard,* 8 Pick. 284, 291.   *Clapp* v. *Wilder,* 176 Mass. 332, 335.   *Bessey* v.

*Ollman,* 242 Mass. 89. *Shannon* v. *Jacobson,* 262 Mass. 463, 467. "Hereby it is evident, that some words of themselves do make a condition, and some other . . . do not of themselves make a condition without a conclusion and clause of re-entrie: and manie times (*si*) makes a condition and sometimes a limitation . . . ." Co. Lit. 203, b. "The provision for reëntry is . . . the distinctive characteristic of an estate upon condition; and when it is found that by any form of expression the grantor has reserved the right, upon the happening of any event, to reënter, and thereby revest in himself his former estate, it may be construed as such. . . . The words 'provided,' 'so that,' and 'upon condition that,' are the usual words to make a condition; but to say, that if a certain event happen the grantor may reënter, is equally effectual. And the reason of this rule of construction is, that the stipulation for a right of reëntry would be senseless if the deed were construed to create a limitation; because the estate vesting upon the mere happening of the event, the right to enter would of course follow with all other rights of ownership." *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612.

Apt words of limitation have been said to be "while," "as long as," "until," "during," or "if it is declared in the lease, that the same shall expire on the happening of any contingency. In such cases, whenever the contingency happens, the lease is determined by its own limitation, without any entry or other act to be done by the lessor." *Wheeler* v. *Dascomb,* 3 Cush. 285, 288. *Easterbrooks* v. *Tillinghast,* 5 Gray, 17. *Ashley* v. *Warner,* 11 Gray, 43, 45. *First Universalist Society* v. *Boland,* 155 Mass. 171, 174, and cases cited. See Co. Lit. 203. Technical words, however, are not essential to a condition. *Dyer* v. *Siano,* 298 Mass. 537, 540. Even where there are apt words in an instrument to create a limitation, and sufficient for that purpose if they stood alone, yet an examination of all parts of the instrument may lead to the conclusion that a condition subsequent is its obvious purpose. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612.

On the other hand, although apt words are used to create a condition subsequent, yet a construction of the instrument may result in the conclusion that a conditional limitation was intended, where, for example, the word "if," although used in the grant, was held not to be sufficient of itself to render it a grant defeasible on condition subsequent, the substance of the clause in question being held not to be the forfeiture of a right but the termination of an onerous and unprofitable obligation. *Owen* v. *Field*, 102 Mass. 90, 105. The use of the words "null and void" in a conditional clause does not, as a rule, require the conclusion that a conditional limitation is intended. *68 Beacon Street, Inc.* v. *Sohier*, 289 Mass. 354. See *Cartwright* v. *Gardner*, 5 Cush. 273, 281. It is fundamental that, in the construction of the language of a lease, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible all the language used should be given a reasonable meaning. *Codman* v. *Hygrade Food Products Corp.* 295 Mass. 195, 199. "Every deed is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." *Bessey* v. *Ollman*, 242 Mass. 89, 91.

Conditions subsequent are generally held to be for the benefit of the lessor or his assigns, and confer upon him or them an option whether to enter upon breach of condition or to allow the lessee to continue in possession under the lease. *Saxeney* v. *Panis*, 239 Mass. 207, 210. Respecting the question whether a condition in a lease may be for the benefit of the lessee as well as the lessor, and thereby amount to a conditional limitation, see *Owen* v. *Field*, 102 Mass. 90, 105. The habendum of the lease in question is: "To Hold for the term of fifteen (15) years from the first day of May, 1922, yielding and paying therefor as rent 12½% of the gross receipts from said 'Old Mill', or from any other attractions or concessions that the lessors may permit to be operated thereon during the term of this lease." The lessee was required to pay "as additional rent" all

taxes and assessments on the premises, with an agreement as to the proportionate part to be paid of taxes on lot 457, not here material. The rental to be derived from the operation of the "Old Mill" was a matter of uncertainty, depending upon a variety of conditions, such as the weather and the fancies of patrons of summer resorts such as Salisbury Beach. The taxes to be paid were subject to definite calculation, and their payment would be for the benefit of the lessors. In the event that the lessee failed to operate the "Old Mill," the lessors could permit other attractions or concessions to be operated "during the term of this lease," from which they would derive twelve and one half per cent of the gross receipts. If the clause in question respecting nullification of the lease should be regarded as a conditional limitation it would be difficult to reconcile with it the words of the habendum clause. The words "for the sole purpose of operating an 'Old Mill,'" as appearing in the clause under consideration, do not require a different conclusion. See *Rawson* v. *School District in Uxbridge*, 7 Allen, 125. As bearing upon the construction placed upon this clause by the parties to the lease, it appears that after the "Old Mill" was demolished in 1927 and 1928, other attractions were installed in its place and operated until September, 1930.

We are of the opinion that the clause in question, in the light of all the applicable circumstances, created a condition subsequent and not a conditional limitation. By such a construction every pertinent portion of the lease is made effective and its obvious purposes are most completely executed. We have examined the cases cited by the Associates and, without pausing to discuss them, find nothing in them that is inconsistent with this conclusion.

The distinction between an estate upon condition and the limitation by which an estate is determined upon the happening of some event is a familiar one. In the latter case the estate reverts to the grantor, or passes to the person to whom it is granted by limitation over, upon the mere happening of the event upon which it is limited, without entry or other act; while in the former, an entry upon breach of condition is requisite to revest the estate.

*Fifty Associates* v. *Howland,* 11 Met. 99, 102. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612.

Although the master considered the clause in question a conditional limitation, yet he found that the Associates waived this provision "to the extent only, by inference, of substituting 'attractions or concessions that the lessors may permit' in place of an 'Old Mill' and said 'Old Mill.'" Our construction of the clause as being a condition subsequent does not impair this finding of waiver by the master. *Eustace* v. *Dickey,* 240 Mass. 55, 82. The right to reënter for breach of condition may be waived. *Hubbard* v. *Hubbard,* 97 Mass. 188, 192. Whether there has been a waiver or not is commonly a question of fact. *Shannon* v. *Jacobson,* 262 Mass. 463, 468. The finding was warranted.

Admittedly there was no reëntry by the lessors until April 1, 1935. The lease was to run until May 1, 1937. Obviously the lease continued in force, at least, until the date of entry. *Shannon* v. *Jacobson,* 262 Mass. 463, 468. The plaintiffs argue as to the validity of the entry that the "stockholders" and not the "alleged trustees" of the Associates should have authorized the entry and that the trust has expired of its own limitation. Although the trust was to continue only until April 25, 1931, yet the Attraction Company accepted a lease from the trustees which was to continue until May 1, 1937.* The declaration of trust of the Associates which was recorded provided, among other things, that the trustees "shall have as trustees, the sole ownership, control, power of sale, leasing, letting and exclusive management of all the property at any time held by them under the terms of this trust," and that "no vote of the shareholders shall at any time be necessary for the sale, mortgaging or leasing of any of the real estate of the Association [*sic*]." The plaintiffs have no standing to question the action of the trustees. *Foster* v. *Lee,*

---

* The lessors named in the lease of May 1, 1922, were "Walter Coulson, James E. Simpson and Portal M. Black, Trustees of the Salisbury Beach Associates . . . a voluntary association formed under a Declaration of Trust . . . recorded in South District Essex Registry of Deeds, Book 2086, Page 280." The lease was signed by those three individuals designating themselves as "Trustees." — REPORTER.

271 Mass. 200, 206. *Connolly* v. *Kilcourse*, 285 Mass. 398. See *Dunshee* v. *Grundy*, 15 Gray, 314; *Marion Street Garage Co.* v. *Sugden*, 229 Mass. 130, 134.

The plaintiffs also suggest that any breach of condition was waived by the payment to the Associates by the plaintiff trustees of the taxes on the building on the northeast corner of lot 457, which corner is a part of the demised premises. As we understand the report, this building was built in 1914 and belonged to the Attraction Company. In the lease of May 1, 1922, which contains the condition subsequent clause, the building is described, evidently by way of identifying the northeast corner of lot 457, as "the restaurant building of the Lessee." It was not regarded by the parties as a part of the leased premises and the payment of any taxes upon it was not under any provision of the lease. This leaves it that no rent has been paid by the Attraction Company since 1924 and no taxes have been paid since 1922. Since September, 1930, the Attraction Company has not operated any attraction on the "Old Mill" site. Cases such as *Bartlett* v. *Greenleaf*, 11 Gray, 98, and *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30, 34, do not apply. See *London* v. *Tebo*, 246 Mass. 360, 362.

The plaintiffs also argue that "The defendant is bound by the specifications given in his notice of reëntry, namely the right of reëntry given in the lease." On April 1, 1935, an entry was made and possession of the premises was taken in behalf of the Associates. No notice was served on the Attraction Company. Notice was served on the "Estate of Ralph Pratt," which contains recitals of the failure of the lessee to operate the "Old Mill" (see *Wheeler* v. *Earle*, 5 Cush. 31; *Miller* v. *Prescott*, 163 Mass. 12; *Judkins* v. *Charette*, 255 Mass. 76, 82); that the lease provided that the lessors might enter for failure to perform any conditions or agreements; and that entry had been made and possession taken "by virtue of the termination of the said lease, by virtue of the right given in said lease to enter thereon and to expel the said lessee and by virtue of every other power." We are of the opinion that the lessors did not by this notice, even if they are bound by

it (see *Zevitas* v. *Adams*, 276 Mass. 307, 313, 314), restrict themselves solely to the failure to operate the "Old Mill" as a reason for their entry. That this was a reason is clear from the notice, and if it were the only reason for the entry, and if the Associates are bound by it, the entry would be unavailing because the specified breach had been waived. See *Atkins* v. *Chilson*, 9 Met. 52, 62. But the notice is broad enough to avoid this difficulty. Clearly, in the absence of any waiver of payments of rent and taxes, and no waiver is found, there was a breach of the terms of the lease which entitled the Associates to enter and terminate the lease. *Fifty Associates* v. *Howland*, 5 Cush. 214. *Zevitas* v. *Adams*, 276 Mass. 307, 313, 314. See *McNamara* v. *Dorey*, 219 Mass. 151, 156; *Shannon* v. *Jacobson*, 262 Mass. 463, 468.

The master found that the building on the northeast corner of lot 457 became the property of the Associates on June 1, 1931, evidently upon his interpretation of the law that the disputed clause was one of conditional limitation. This was error. There is no finding as to the ownership of this building (see *Rubenstein* v. *Lottow*, 220 Mass. 156, 164) at the time of or following the entry on April 1, 1935.*

The plaintiffs took thirty-nine exceptions to the first report of the master and one to the report on recommittal. Exceptions 1 to 21 relate to matters in which the master failed to find certain facts. These were overruled properly. *Thompson* v. *Davis*, 225 Mass. 385. *Tuttle* v. *Corey*, 245 Mass. 196, 203. *Rosenberg* v. *Garfinkel*, 294 Mass. 196, 198. The same applies to the exception to the supplemental report. As to the remaining exceptions to the first report,

---

* Material findings by the master as to ownership of the building were as follows in substance: "The building referred to in said lease to Pratt is not permanently affixed to the premises described therein. It rests on posts and is readily removable. It was built in the spring of 1914, when all of said Lot 457 was held under lease by the said Attraction Company which continued to so hold until [the new lease of] May 1, 1922. . . . [In the leases the] said building [is referred to] as the property of the said Attraction Company. . . . The trustees under the will of Ralph Pratt became tenants at sufferance of the trustees of the Salisbury Beach Associates on June 1, 1931, as to the premises described as the northeast corner of lot 457. The building located on said premises was the property of the Salisbury Beach Attraction Company, and became the property of the trustees of the Salisbury Beach Associates on June 1, 1931."— REPORTER.

the plaintiffs merely suggest in their brief that all, except number 38, which has not been argued, "are based upon the proposition that the tenancy was one on condition subsequent requiring an entry for its termination, and the authorities supporting these requests have been heretofore presented in this brief." But exceptions 22 to 31 inclusive are to the failure of the master to make rulings of substantive law. These exceptions were overruled properly. *Hennessey* v. *Preston*, 219 Mass. 61, 65. *Bradley* v. *Borden*, 223 Mass. 575, 586. *Tuttle* v. *Corey*, 245 Mass. 196, 204. See *Lithuanian Alliance* v. *Staliulionis*, 284 Mass. 287, 290. Exception 32 is to the finding that the lease became null and void on May 30, 1931, and should have been sustained for reasons already given. The same applies to exception 33, to the finding that the plaintiff trustees became tenants at sufferance of the Associates on June 1, 1931. Exception 34 also should have been sustained, the objection being to the finding that the building in question became the property of the Associates on June 1, 1931. There is no occasion to discuss the remaining exceptions to the first report. For reasons hereinbefore stated they were overruled rightly.

The complaint of the plaintiffs, that the master failed to append to his report a summary of the evidence bearing on certain objections and exceptions, has no standing in this court, for the plaintiffs have failed to take the necessary steps to enable us to deal with it, under the practice outlined in *Pearson* v. *Mulloney*, 289 Mass. 508, 512, 513, *Israel* v. *Sommer*, 292 Mass. 113, 119, and *Morin* v. *Clark*, 296 Mass. 479, 483–484.

The Associates are entitled to the rental of the stores in the building, the ownership of which is in dispute, from April 1, 1935. The plaintiffs concede that, "if the estate was not terminated until the entry of April 1st, 1935, then the sum collected for the year 1935 belongs to the defendant Associates." The Associates have argued extensively that the case of *68 Beacon Street, Inc.* v. *Sohier*, 289 Mass. 354, is in no wise in conflict with their contentions in the case at bar, and that, if it be so considered, it ought not

to be followed. We find no occasion to review the decision in that case. We have considered all questions which were argued.

The results are that the interlocutory decree must be reversed and the plaintiffs' exceptions numbered 32, 33 and 34 must be sustained; the findings of the master as to the amounts due for rent and taxes from the Attraction Company under the lease, up to and including 1930, are to stand; the final decree must be reversed and the case stand for further hearing in accordance with this opinion for the purpose of determining what, if anything, is due the Associates for rent and taxes since 1930, and also of determining the ownership of the building in question. See *Hennessey* v. *Preston*, 219 Mass. 61, 65; *Rubenstein* v. *Lottow*, 220 Mass. 156, 164; *Lithuanian Alliance* v. *Staliulionis*, 284 Mass. 287, 300.

*Ordered accordingly.*