WILLIAM ZENON v. R. E. YEAGHER MANAGEMENT CORPORATION ET AL.
(AC 18659)

Lavery, Landau and Dupont, Js.

---

Argued January 11—officially released April 18, 2000

*Stanley Falkenstein,* with whom was *Julia Morris Paul,* for the appellant (plaintiff).

*Mark R. Brouillard,* with whom was *Colleen Creevy Cording,* for the appellees (defendants).

DUPONT, J. The plaintiff, William Zenon, appeals from the judgment rendered in favor of the defendants[1] following a trial to the court in this action pertaining to the lease of certain real property. On appeal, the plaintiff claims that the court improperly (1) found under Massachusetts law that a clause in a lease executed by the parties was a limitation rather than a condition subsequent, (2) concluded that a promissory note executed by one of the defendants was unenforceable under Massachusetts law and (3) dismissed the plaintiff's fraudulent conveyance claim. We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff, a Massachusetts real estate broker, owned property at 11 Worcester Road, Webster, Massachusetts. A restaurant building was located on the property. The defendant Robert Yeagher (Yeagher) responded to an advertisement for the sale or lease of the premises and met with the plaintiff to discuss these possibilities. The parties eventually agreed that the named defendant, R. E. Yeagher Management Corporation (corporation), would lease the property to operate a pub style facility on the premises. During their meeting, the parties discussed the corporation's procuring a liquor license. The court found that "[i]t is essential to a pub that alcoholic beverages be served there." The court found that "[t]he plaintiff informed Yeagher that he held the liquor license for the restaurant and would transfer the license to the corporation after the lease agreement was signed. Unknown to Yeagher, the liquor license was held by the former tenant and not the plaintiff at that time."

On May 19, 1994, a lease agreement was entered into between the plaintiff, as landlord, and the corporation,

---

[1] The defendants in this case are Robert Yeagher, Marianne Yeagher and R. E. Yeagher Management Corporation.

as tenant, with Yeagher personally guaranteeing the lease. The lease was for a period of five years. Section 37 of the lease, titled, "Occupancy Commencement Condition," is the subject of the plaintiff's first claim on appeal. It provides: "37.1 Whereas the Tenant wishes to purchase from the Landlord the right and title of the Landlord's Liquor License under a separate 'Purchase and Sale Agreement' and under a separate 'Promissory Note,' which License shall be resold back to the Landlord under the aforesaid agreements.

"37.2 The Landlord hereby covenants and agrees to refund the Tenant's security deposit of Ten Thousand ($10,000.00) Dollars in full, in the event that a Liquor License is not in the name of the Tenant and in use and effect on the Leased Premises not later than three (3) months from the date of commencement of the Lease term, then this Lease Agreement shall terminate and come to end."

Yeagher took possession of the premises on the lease commencement date, May 19, 1994. He "engaged in substantial steps to prepare for operation, such as making structural repairs and procuring additional equipment." Yeagher also sought to procure a liquor license in the corporation's name. In August, 1994, the plaintiff obtained the license to the restaurant on the premises from his former tenant's bankruptcy estate at an auction conducted by the bankruptcy trustee. Thereafter, Yeagher applied for approval of the transfer of the license. In October, 1994, the local authority approved his application. The state liquor authority, the Massachusetts alcoholic beverage control commission, however, disapproved the transfer because the corporation was deemed to be financially unsuitable. Yeagher reapplied, but his second application was denied by the local authority.

Despite Yeagher's failure to obtain a liquor license, the corporation remained in possession of the premises.

From August 20, 1994, through April, 1995, the corporation paid no rent. Yeagher consulted with his attorney about drafting a new lease agreement, but no new agreement was drawn.

When Yeagher's attempts to obtain a liquor license failed, the parties devised a plan for the operation of the pub whereby Yeagher would operate the pub under the plaintiff's liquor license, with Yeagher acting as "manager" and the plaintiff as "owner." The court found that "the plaintiff and Yeagher engaged in an unlawful ruse to deceive the liquor control authorities. The plaintiff pretended that it was he who owned the pub instead of Yeagher's corporation, and Yeagher pretended that he was merely a manager rather than the principal shareholder of the corporation that owned the business. The parties went so far as to create a dummy checking account in the plaintiff's name to be used when necessary to maintain the false appearance of the plaintiff's ownership of the business."

To carry this plan forward, the plaintiff had Yeagher execute a promissory note, payable to the plaintiff, in the amount of $16,280. Yeagher testified that he signed the note because he wanted to operate the pub; the plaintiff said that he needed the note because he was having trouble with his bank and that it was agreed that the amounts paid on the note would come from the sales of the restaurant. Yeagher paid the plaintiff $9440 on the note, but not the remainder due under its terms.

The pub opened in May, 1995. Within a few months, the corporation missed rental payments, and the plaintiff locked Yeagher out of the building on August 6, 1995. About three weeks later, fire damaged the building and its contents.

On April 26, 1996, the plaintiff filed a three count amended complaint. In count one, the plaintiff sought

to collect the balance due on the promissory note. In count two, the plaintiff sought to collect rental payments from August, 1994, through August, 1995, and damages under the lease agreement. Count three stated a claim for fraudulent transfer, alleging that Yeagher fraudulently transferred real property to his wife, the defendant Marianne Yeagher, with an intent to defraud and prevent the plaintiff from securing payment on his debt. The defendants thereafter filed an answer, amended special defenses and an amended six count counterclaim.

A trial to the court was held on May 5 and 6, 1998. In a memorandum of decision dated July 8, 1998, the court ruled in favor of the defendants on all counts of the amended complaint and on counts five and six of the amended counterclaim, and for the plaintiff on counts one through four of the amended counterclaim. Only the plaintiff has appealed.[2]

We first address the issue of what law governs our resolution of this case. Both the lease agreement and the promissory note contained choice of law provisions, providing that they shall be construed and enforced in accordance with the laws of the commonwealth of Massachusetts. At trial, the parties argued, and the court agreed, that Massachusetts substantive law governed the parties' claims except for the allegation of fraudulent transfer, which pertained to Connecticut realty.

"Contracts clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut." *Syncsort, Inc.* v. *Indata Services*, 14 Conn. App. 481, 484, 541 A.2d 543,

---

[2] This appeal concerns the judgment for the defendants on the plaintiff's amended complaint only, as the plaintiff has not raised any claims as to the judgment for the defendants on counts five and six of their counterclaim awarding Yeagher and the corporation $10,000 for the plaintiff's failure to return the security deposit.

cert. denied, 209 Conn. 804, 548 A.2d 443 (1988). Accordingly, we are guided by Massachusetts substantive law in deciding the plaintiff's claims concerning the promissory note and the lease. We note, however, that although we apply the substantive law of Massachusetts to decide these claims, the appropriate standard of review is a procedural issue and is governed by Connecticut law. See *State* v. *Diaz*, 226 Conn. 514, 557, 628 A.2d 567 (1993) (*Berdon, J.*, dissenting), citing *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 370, 613 A.2d 254 (1992); *Burton* v. *Burton*, 189 Conn. 129, 139 n.8, 454 A.2d 1282 (1983).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Internal quotation marks omitted.) Id., 236. Here, the trial court determined that the contractual commitments of the parties were a question of law to be decided in accordance with Massachusetts law. We therefore afford plenary review to these claims, the review required in such cases according to Connecticut law.

I

The plaintiff first claims that the court improperly found that the termination clause in the lease was a limitation rather than a condition subsequent. We disagree.

Count two of the plaintiff's amended complaint alleged a claim for unpaid rent and damages under the lease. The court concluded that the lease automatically

terminated by virtue of its terms on August 20, 1994, and therefore the plaintiff could not collect under the lease because his claims related to events that occurred after August 20, 1994. In reaching this conclusion, the court relied on clause 37.2 of the lease, which provides: "The Landlord hereby covenants and agrees to refund the Tenant's security deposit of Ten Thousand ($10,000.00) Dollars in full, in the event that a Liquor License is not in the name of the Tenant and in use and effect on the Leased Premises not later than three (3) months from the date of commencement of the Lease term, then this Lease Agreement shall terminate and come to end."

In determining whether the language of the lease was a limitation that would terminate the lease upon the occurrence of a contingency without the necessity of notice or other confirmatory action or whether the language created a condition subsequent, which would require some further action such as notice to terminate the lease, the court looked to the lease agreement itself. In its memorandum of decision, the court concluded that "[c]lause 37.2 unequivocally states that upon failure to transfer the liquor license to the corporation within three months 'this Lease Agreement shall terminate and come to end.' The agreement was drafted by the plaintiff and contains no notice or other requirement before termination under clause 37.2. In contrast, other provisions of the agreement contained notice before termination language, e.g., clause 16. The intent of the parties as evidenced by the unambiguous wording of the agreement was that nontransfer of the liquor license within three months ends the lease."

The crux of the plaintiff's claim is that the court misconstrued the lease provision. Specifically, the plaintiff claims that the court improperly read into the lease the requirement of a transfer of the liquor license. The plaintiff claims that under the unambiguous lan-

guage of the lease provision, there is no requirement that a transfer of the liquor license occur, and that the court improperly relied on statements made surrounding the creation of the lease. According to the plaintiff, the lease implicitly requires that if the tenant wants to terminate the lease, it must notify the landlord for the security deposit to be returned. The plaintiff claims that the lease provision created a condition subsequent requiring some confirmatory act on the part of the defendants, and that because the defendants failed to notify the plaintiff of their intent to terminate the lease, the lease remained in full force and effect.

"A lease for a term of years may properly be made subject to termination at a specified time, upon the occurrence of an event or events within the control of the party electing to terminate." *Loitherstein* v. *International Business Machines Corp.*, 11 Mass. App. 91, 93, 413 N.E.2d 1146 (1980), review denied, 383 Mass. 890, 441 N.E.2d 1042 (1981). Such a provision creates a conditional limitation "if it is declared in the lease, that the same shall expire on the happening of any contingency. In such cases, whenever the contingency happens, the lease is determined by its own limitation, without any entry or other act to be done by the lessor." (Internal quotation marks omitted.) *Markey* v. *Smith*, 301 Mass. 64, 69, 16 N.E.2d 20 (1938).

"Conditions subsequent are generally held to be for the benefit of the lessor or his assigns, and confer upon him or them an option whether to enter upon breach of condition or to allow the lessee to continue in possession under the lease." Id., 70. "The provision for reentry is . . . the distinctive characteristic of an estate upon condition; and when it is found that by any form of expression the grantor has reserved the right, upon the happening of any event, to reenter, and thereby revest in himself his former estate, it may be construed as such." (Internal quotation marks omitted.) Id., 69. "The

distinction between an estate upon condition and the limitation by which an estate is determined upon the happening of some event is a familiar one. In the latter case the estate reverts to the grantor, or passes to the person to whom it is granted by limitation over, upon the mere happening of the event upon which it is limited, without entry or other act; while in the former, an entry upon breach of condition is requisite to revest the estate." Id., 71.

"[A] contract is to be construed to give a reasonable effect to each of its provisions if possible." *McMahon* v. *Monarch Life Ins. Co.*, 345 Mass. 261, 264, 186 N.E.2d 827 (1962). "The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *USM Corp.* v. *Arthur D. Little Systems, Inc.*, 28 Mass. App. 108, 116, 546 N.E.2d 888 (1989). "A lease is to be read in the light of the circumstances of its execution . . . ." *Robert Industries, Inc.* v. *Spence*, 362 Mass. 751, 753, 291 N.E.2d 407 (1973). "It is fundamental that, in the construction of the language of a lease, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible all the language used should be given a reasonable meaning. . . . Every deed is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed." (Citation omitted; internal quotation marks omitted.) *Markey* v. *Smith*, supra, 301 Mass. 70. "Expressions in our cases to the effect that evidence of circumstances can be admitted only after an ambiguity has been found on the face of the written instrument have reference to evidence offered to contradict the written terms." *Robert Industries, Inc.* v. *Spence*, supra, 754.

Here, the court concluded that "[t]he intent of the parties as evidenced by the unambiguous wording of the agreement was that nontransfer of the liquor license within three months ends the lease." While clause 37.2 in the lease did not specifically mention the "transfer" of a liquor license, this clause must be read in conjunction with the immediately preceding clause, clause 37.1, which provides that the tenant wishes to purchase from the landlord the right and title to the landlord's liquor license under a separate agreement. Both clauses appear under the same section of the lease concerning the lease's commencement. Construing the provisions together, it can be concluded only that upon the failure of the transfer of the liquor license from the landlord to the tenant within the first three months of the commencement of the lease, the lease terminated.

Furthermore, clause 37.2 provides that "in the event that a Liquor License is not in the name of the Tenant and in use and effect on the Leased Premises not later than three (3) months from the date of commencement of the Lease term" the lease shall terminate. It is undisputed that a liquor license was not in the name of the tenant within three months from the commencement of the lease.

Clause 37.2 of the lease does not contain a notice or other requirement prior to termination of the lease. The fact that other provisions of the lease contained such language of condition subsequent indicates that clause 37.2 was not intended to contain such language. The court properly found that the language in the lease was a conditional limitation, which caused the lease to terminate upon the occurrence of the contingency, namely, the failure of a liquor license to be in the tenant's name and in use within three months of the commencement of the lease. This interpretation is consistent with the language, background and purpose of the lease. Yeagher, through his corporation, intended

to operate a pub style facility on the premises, and it was essential to the operation of such facility that Yeagher be able to serve alcoholic beverages. It is evident that the intent of the parties, as manifested by the language used in the lease, was to terminate the arrangement in the event that the defendants could not serve alcohol on the premises, and thus, not operate a pub style facility.

The plaintiff also claims that the court improperly found that the defendants did not waive the termination clause of the lease. The plaintiff claims that even if the lease automatically terminated upon the failure of a liquor license to be in the name of the corporation within three months, the defendants waived this provision by failing to make a timely demand for return of the security deposit. The plaintiff claims that the parties, by their words and conduct, intended to continue their relationship. We are not persuaded.

The court found "that the defendants never waived this termination clause. The plaintiff knew the defendants sought legal advice regarding the creation of a new agreement and refund of the security deposit. Significantly, the defendants ceased paying rent until the pub opened for business the following year. Consequently, the lease expired on August 20, 1994."

Under the facts and circumstances of this case, we are unable to conclude that the court's finding of no waiver was improper. "[W]aiver implied by a person's conduct . . . must be unequivocal and must allow room for no other explanation . . . ." *Boston Helicopter Charter, Inc.* v. *Agusta Aviation Corp.*, 767 F. Sup. 363, 372 (D. Mass. 1991). Here, it was not shown that the defendants unequivocally intended to waive the termination clause in the lease.

Because the lease was no longer in effect after August 20, 1994, and the defendants did not waive the termina-

tion clause, the court properly found for the defendants on this count.

## II

The plaintiff next claims that the court improperly found that the promissory note was unenforceable and rendered judgment for the defendants on count one of the amended complaint. The plaintiff claims that the court improperly relied on *Hastings Associates, Inc.* v. *Local 369 Building Fund, Inc.*, 42 Mass. App. 162, 675 N.E.2d 403, review denied, 424 Mass. 1108, 678 N.E.2d 1334 (1997), in deciding this claim. A resolution of this claim requires us, in part, to review the court's findings of fact, which we review under the clearly erroneous standard; *Powers* v. *Olson*, 252 Conn. 98, 104–105, 742 A.2d 799 (2000); and to determine whether the court properly determined that *Hastings Associates, Inc.*, governs this case.

The following additional facts are necessary to our resolution of this claim. In count one of the amended complaint, the plaintiff sought to collect from Yeagher on a promissory note. The court, however, concluded that the note was unenforceable. The basis for the court's conclusion was its finding that the plaintiff and Yeagher had conspired to defraud the liquor control authorities after Yeagher's attempts to secure a liquor license failed. The court concluded that "[o]peration of the pub by means of the deceit described above rendered this enterprise unlawful under Massachusetts liquor laws. The question arises as to whether a coconspirator can expect a court to enforce agreements which are made to facilitate, foster, or support patently illegal activity. The court holds that, under Massachusetts law, such agreements are unenforceable."

The court relied on *Hastings Associates, Inc.*, and 2 Restatement (Second), Contracts §§ 181 and 182 (1981), in reaching its decision. In finding that the promissory

note was unenforceable, the court stated: "The present case is indistinguishable from *Hastings* [*Associates, Inc.*]. The sale of alcoholic drinks is the essence of a pub. The promissory note served to undermine the Massachusetts liquor licensing system and permit prohibited conduct to occur. Both parties willingly and knowingly engaged in this subterfuge in order to achieve their own goals despite the strong public policy concerning control over who may sell alcoholic refreshments. . . . The promissory note was integral to implement the unlawful operation of the pub because the plaintiff demanded its creation as part of the transaction."

*Hastings Associates, Inc.*, involved a claim for breach of a lease agreement. On appeal, the defendant claimed that the plaintiff's contract claim was barred because the lease agreement was predicated on an illegal transfer of the defendant's liquor license. *Hastings Associates, Inc.* v. *Local 369 Building Fund, Inc.*, supra, 42 Mass. App. 173. The Massachusetts Appeals Court agreed with the defendant and concluded that the agreement was unenforceable. Id. The court found that the parties' actions pursuant to the lease agreement effectively resulted in an illegal transfer of the defendant's liquor license to the plaintiff in violation of Mass. Gen. Laws c. 138, §§ 2 and 23. Id., 174. The court, however, held that the finding of an illegality alone was not sufficient to invalidate the agreement. Id.,175. "[C]ourts do not go out of their way to discover some illegal element in a contract or to impose hardship upon the parties beyond that which is necessary to uphold the policy of the law . . . . We must examine and weigh all of the circumstances: what was the nature of the subject matter of the contract; what was the extent of the illegal behavior; was that behavior a material or only an incidental part of the performance of the contract . . . what was the strength of the public policy

underlying the prohibition; how far would effectuation of the policy be defeated by denial of an added sanction; how serious or deserved would be the forfeiture suffered by the plaintiff, how gross or undeserved the defendant's windfall." (Citations omitted; internal quotation marks omitted.) Id.

The court in *Hastings Associates, Inc.*, then analyzed these factors in light of the facts of that case. The court found that the plaintiff's illegal use of the license was not incidental to the plaintiff's claim and that this element so permeated the parties' transaction as to be controlling. Id., 176. As to the plaintiff's claim that it would suffer a substantial forfeiture and the defendant a windfall, the court stated: "While the cases bespeak a judicial tolerance for relatively insubstantial violations of licensing statutes or regulations, particularly when failure to enforce the contract results in substantial unfairness to one or both contracting parties, the public interest in freedom of contract is sometimes outweighed by public policy, and in such cases the contract will not be enforced." (Internal quotation marks omitted.) Id., 177. Citing 2 Restatement (Second), supra, § 181,[3] the court concluded that the liquor licensing requirements are for the protection of the public and common good; *Hastings Associates, Inc.* v. *Local 369 Building Fund, Inc.*, supra, 42 Mass. App. 177–78; and "[h]ere, where the plaintiff's application for its own license was denied, the parties by their arrangement effectively substituted their own judgment for that of the local licensing authority. To permit the plaintiff to recover under its illegal arrangement would reward it

---

[3] Section 181 of the Restatement (Second) of Contracts provides: "If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if (a) the requirement has a regulatory purpose, and (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement."

for its illegal conduct and would contravene public policy by elevating the plaintiff's private interests over those of the public." Id., 178.

The plaintiff in the present case claims that the trial court's reliance on *Hastings Associates, Inc.*, was misplaced because that case is distinguishable. The plaintiff claims that unlike in *Hastings Associates, Inc.*, the sale of a liquor license was not inseparable from the lease of the premises and that the elements for an illegal transfer of a liquor license were not present here. The plaintiff also claims that unlike in *Hastings Associates, Inc.*, where the lease agreement itself was predicated on illegal conduct, the lease agreement here was not found to be illegal by the court. Finally, the plaintiff claims that the illegal conduct here was not a material part of the contract between the parties, namely, the lease agreement.

The plaintiff, however, misunderstands the issue before the court. Count one of the amended complaint alleged nonpayment of a promissory note executed by the plaintiff and Yeagher. In deciding whether the note was enforceable, the court was confronted with the issue of whether the note was executed to advance the illegal conduct of the parties and whether the plaintiff should be allowed to assert in court any right based on an illegal transaction. The plaintiff asserts that the issues are whether the lease between the plaintiff and the corporation was valid and whether the parties' illegal conduct was material to the lease agreement. These issues are irrelevant.

We agree with the trial court that the holding in *Hastings Associates, Inc.*, governs this case. Here, the parties twice unsuccessfully attempted to transfer the liquor license to the premises from the plaintiff to the corporation. Thereafter, and subsequent to the execution of the lease, the parties devised a plan whereby

Yeagher would operate the pub under the plaintiff's liquor license as "manager" with the plaintiff as "owner." The court found this to be an "unlawful ruse to deceive the liquor control authorities." Yeagher testified that as part of the arrangement, the plaintiff demanded that Yeagher execute a promissory note payable to the plaintiff in the amount of $16,280. The execution of this note was integral to the implementation of the unlawful operation of the facility. The parties, by their conduct, effected an illegal transfer of the plaintiff's liquor license to the defendants and effectively substituted their judgment for that of the licensing authority. Although *Hastings Associates, Inc.*, involved a claim pursuant to a lease, its principles apply to the validity of the promissory note here in question. Accordingly, pursuant to *Hastings Associates, Inc.*, the plaintiff could not recover under its illegal arrangement. The judgment of the trial court on this count was proper.

## III

The plaintiff's final claim is that the court improperly dismissed count three of the amended complaint. Count three alleged a claim for fraudulent conveyance, liability for which depended on the defendants' liability as to counts one and two. The court held that because it found for the defendants on counts one and two, the issue of fraudulent conveyance in count three was rendered nugatory. The plaintiff claims that if he succeeds on appeal as to his claims concerning counts one and two, then count three should be reinstated on remand. Because we have concluded that the judgment of the trial court as to counts one and two was proper, this claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.