van Gestel, J.
This matter is before the Court on a motion by the plaintiff, R.K. Wheeler LLC (“R.K.’j, for summary judgment against the defendant, Moran Foods, Inc., d/b/a Save-A-Lot, Ltd. (“Moran”). In actuality, the motion seeks partial summary judgment on liability only. The amount of damages may yet be in dispute.
BACKGROUND
This case involves rights and obligations under a commercial lease (the “lease”) and tenancy. R.K. is the successor landlord, and Moran, the successor tenant under a commercial lease or as a tenant at will for certain property (the “property”) located at 80 Pulaski Boulevard in Bellingham, Massachusetts.
The lease contains one of those quaint default provisions that real estate lawyers seem too frequently to embrace in documents like that now before the Court. This default provision is designated as Section 21, in a 25-section, 26-page lease. Section 21 itself is a single sentence that meanders through 63 lines, over 2V2 pages, of double-spaced text, on all or parts of four sheets of 8V2 by 11-inch standard-sized paper. The sentence occasionally comes up for air, in often grammatically questionable form, with the aid of commas and semicolons on its extended journey from the first word on page 21 to the final period on page 24. In abbreviated fashion, the Court here quotes those portions of that long sentence that are pertinent to the present motion.
[T]his Agreement is made on the express condition that... if default shall be made in the performance or observance of any of the other covenants, agreements or conditions of the Lease on the part of the Lessee to be performed or observed . . . and ... in case of any such . . . default if Lessee shall not, within thirty (30) days after the Lessor has given the Lessee notice of such default, actively begin to remove or make good such default and proceed to and remove, remedy or make good such default as soon as reasonably possible, but in no event later than ninety (90) days after the giving of said notice . . . then ... it shall be lawful for the Lessor thereupon or at any time thereafter at its option and without further notice to said Lessee ... to enter upon the Demised Premises . . . and repossess the same as of its former estate . . . and upon entry as aforesaid the Lease and this agreement shall determine . . . and in case of entry . . . the Lessee . . . shall, at the election of the Lessor, in case of termination of the Lease as aforesaid, pay to the Lessor at the date of such termination as liquidated damages the difference between the total rent which it is fairly estimated that the Lessor will receive for said premises during the residue of said term and the sums herein required to be paid by the Lessee by way of rent or otherwise . . .
gy a certified letter dated March 6, 2002, R.K. notified Moran as follows:
Despite repeated default notices and extreme patience on our part, the maximum cure period has long elapsed and [certain previously noticed] default conditions have not been addressed in any manner. Section 21 specifically empowers the Lessor “at its option and without further notice” to terminate the Lease. We hereby exercise this right and terminate the Lease.
The defaults referred to in the March 6, 2002, letter were non-monetary items described in notices from R.K. to Moran between April 17, 2001, and December 26, 2001. Moran did not challenge the statements in this letter; nor, however, did it vacate the premises. Rather, Moran continued in possession and made its monthly rental and other payments.
On June 5, 2002, Moran wrote to R.K. as follows:
In response to the Letter dated March 6, 2002 regarding the Non-monetaiy default condition at the above location, Save-A-Lot has worked diligently to correct the default items. Save-A-Lot has satisfied and corrected all the following default conditions:
[describing the corrected default items]
It is Save-A-Lot’s position that with the default conditions corrected that we are in full compliance with the lease and in good standing.
Thereafter, Moran continued to remain on the premises and pay the usual rent and other chargesall of which were accepted without reservation or limiting comment by R.K.until April 30, 2003, when Moran vacated the premises. This vacation of the premises was presaged by a March 10, 2003, letter from Moran to R.K., which reads in part as follows:
Moran Foods, Inc., d/b/a Save-A-Lot, will be closing its business at the above address on or around Saturday, April 5, 2003. Since we are a month-to-month tenant under the current lease structure, we are hereby notifying you of our intent to surrender the premises to you on or before April 30, 2003.
R.K., while continuing to assert that the lease was still in force, took physical possession upon receipt of the keys on or about April 30, 2003. Thereafter, no further rental or other payments were made by Moran.
In the interim period from June 5, 2002, until April 30, 2003, R.K., in various written and oral communications with Moran, frequently and consistently referred to the tenancy relationship as a “month-to-month occupancy” or a “month-to-month tenancy.”
This suit was filed shortly thereafter on June 25, 2003.
*79 DISCUSSION
“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Mass.R.Civ.P. Rule 56(c).
The material facts here, on the issue of liability at least, are recited above and are not in dispute. What is necessary is for the Court to sort out the parties’ relationship with each other in regard to the tenancy at the premises, from which will flow their respective rights and obligations. The Court begins with and applies some general legal propositions that assist in its decision.
“In our decisions we have followed the rule that equity does not favor forfeiture” of a lease. Howard D. Johnson Co. v. Madigan, 361 Mass. 454, 456 (1972).
A landlord must terminate “the lease in the manner (entry) provided in the lease.” Nautican Realty Company, Inc. v. Nantucket Shipyard, Inc., 28 Mass.App.Ct. 902, 903 (1990). By the express language of the lease in issue here the method of termination is “to enter upon the Demised Premises ... and repossess the same as of its former estate . . . and upon entry as aforesaid the Lease and this agreement shall determine.” (Emphasis added.) Lease Section 21. The letter of March 6, 2002, does not constitute an entry and repossession. Yet, such entry and repossession are not a limitation, but rather a condition of the termination.
“[S)ome words of themselves do make a condition, and some others ... do not of themselves make a condition without a conclusion and clause of re-entrie: and manie times (sic) makes a condition and sometimes a limitation . . .” Co. Lit. 203, b. “The provision for reentry is . . . the distinctive characteristic of an estate upon condition; and when it is found that by any form of expression the grantor has reserved the right, upon the happening of any event, to reenter, and thereby revest in himself his former estate, it may be construed as such . . . The words ‘provided,’ ‘so that,’ and ‘upon condition that,’ are the usual words to make a condition; but to say, that if a certain event happen the grantor may reenter, is equally effectual. And the reason of this rule of construction is, that the stipulation for a right of reentry would be senseless if the deed were construed to create a limitation; because the estate vesting upon the mere happening of the event, the right to enter would of course follow with all other rights of ownership.” Attorney General v. Merrimack Manuf. Co., 14 Gray 586, 612.
Markey v. Smith, 301 Mass. 64, 69 (1938). See also McCarthy v. Harris, 17 Mass.App.Ct. 1002, 1003 (1984); Slater v. Krinsky, 11 Mass.App.Ct 941 (1981).
Conditions subsequent are generally held to be for the benefit of the lessor or his assigns, and confer upon him or them an option whether to enter upon breach of condition or to allow the lessee to continue in possession under the lease. Saxeney v. Panis, 239 Mass. 207, 210. Respecting the question whether a condition in a lease may be for the benefit of the lessee as well as the lessor, and thereby amount to a conditional limitation, see Owen v. Field, 102 Mass. 90, 105 . . .
The distinction between an estate upon condition and the limitation by which an estate is determined upon the happening of some event is a familiar one. In the latter case the estate reverts to the grantor, or passes to the person to whom it is granted by limitation over, upon the mere happening of the event upon which it is limited, without entry or other act; while in the former, an entry upon breach of condition is requisite to revest the estate. Fifty Associates v. Howland, 11 Metc. 99, 102; Attorney General v. Merrimack Manuf. Co., 14 Gray 586, 612.
Markey, supra, 301 Mass, at 70-72.
The condition upon which R.K. may terminate the lease is a unilateral right to which literal compliance must be required.
[H]olding the possessor of a unilateral right of this sort to literal compliance with the requirements for its exercise enforces commercial certainty. The particular language for the [condition in issue] was carefully chosen by sophisticated parties and is not dependent for its explication or effect on any other provisions of the lease. Void of subtleties, it “must be enforced according to its terms.” Sherman v. Employers’ Liab. Assur. Corp., 343 Mass. 354, 356 (1961), and cases cited. The provision cannot be judicially rewritten to cure an oversight or to relieve [a party] from the effect of an unforeseen contingency. See Van Dusen Aircraft Supplies of New England, Inc. v. Massachusetts Port Authy., 361 Mass. 131, 142-43 (1972); Kostick v. Dupree, 10 Mass.App.Ct. 929 (1980). The option to terminate was not properly exercised. See Pope v. Abbott, 211 Mass. 582, 583 (1912); Hunt v. Bassett, 269 Mass. 298, 302 (1929); Hurd v. Cormier, 358 Mass. 736, 738 (1971).
... As was recently stated in an analogous case with a canvass of relevant authorities: “In the circumstances it may not be too much to ask that a person seeking ... to exercise (unilateral) option rights turn his corners squarely.” Westinghouse Bdcst. Co. v. New England Patriots Football Club, Inc., [10 Mass.App.Ct. 70, 73 (1980)].
Loitherstein v. International Business Machines Corp., 11 Mass.App.Ct. 91, 94-95 (1980).
In the absence of any evidence of a re-entiy and taking of possession, the lease did not terminate by the letter of March 6, 2002, regardless of what the *80 parties themselves may have thought or said. Parties to a written leasehold relationship cannot change that relationship simply by saying so or by inaction. There must be an agreement to do so. This is particularly so where, as here, both parties, at different times, made contradictory statements about the legal status of the tenancy. “The mistake of law by [a] party to the contract was not a ground for avoiding it. John J. Bowes Co. v. Inhabitants of Town of Milton, 255 Mass. 228, 233-34. See Eno v. Prime Mfg. Co., 317 Mass. 646, 650-51, and cases cited; Cohen v. Santoianni, 330 Mass. 187, 193; Century Plastic Corp. v. Tupper Corp., 333 Mass. 531, 533-34.” Scirpo v. McMillan, 355 Mass. 657, 660 (1969).
But even if there was a termination in March of 2002, that termination must be deemed waived by the subsequent action of R.K. in accepting rent without reservation or limiting comment. “Where a lessor with knowledge of a lessee’s breach of a covenant accepts from him, without reservation, rent accruing thereafter, he thereby waives his right to enforce a forfeiture for that cause. O’Keefe v. Kennedy, 3 Cush. 325, 328; Nelson Theatre Co. v. Nelson, 216 Mass. 30, 34; London v. Tebo, 246 Mass. 360, 362; Paeff v. Hawkins-Washington Realty Co., Inc., [320 Mass. 144, 146].” Whitehouse Restaurant, Inc. v. Hoffman, 320 Mass. 183, 186 (1946).
Only by applying the foregoing rulings can this Court remain faithful to the first stated principle above that the law does not favor forfeiture of a lease.
Consequently, the legal posture of R.K. and Moran, on April 30, 2003, was always that of landlord and tenant under the lease, not that of landlord and tenant in a tenancy at will. Moran, therefore, breached the lease by vacating the premises and terminating its rent payments at the end of April 2003. As a result, matters relating to the liquidated damages clause and R.K.’s mitigation of the damages are all that remain for determination.
Before leaving this discussion, however, the Court pauses to observe that even if its decision that the lease did not terminate in March of 2002, or for that matter in June of 2002 or thereafter, is erroneous does not change the result regarding Moran’s liability for damages. It only may change the measure of those damages. This is because, if Moran is correct that R.K. terminated the lease because of Moran’s default in March of 2002, and Moran’s purported belated cure in June of 2002 did not result in a resurrection of the tenancy under the lease, then Moran owes R.K. whatever damages were appropriate under Section 21 of the lease as of its termination in March of 2002. To rule otherwise would allow Moran, despite its defaults, to avoid paying damages to R.K. after a proper termination.
ORDER
For the foregoing reasons, the Plaintiff, R.K. Wheeler LLC’s Motion for Summary Judgment (Paper #8), is ALLOWED on the issues of liability only. This case remains open for an assessment of damages only.