WALTER A. WOOD MOWING AND REAPING CO. v. GREEN-
WOOD HARDWARE CO.

COMBINATIONS—TRUSTS.—THE CONTRACT here held to be an agreement between plaintiff to sell exclusively to defendant and by defendant to buy exclusively of plaintiff farm machinery, to be sold in territory of Greenwood and vicinity, one of those minor contracts in partial restraint of trade which is a fair protection of the mutual interests of the parties, not injurious to the public as tending to create a monopoly, and is not violative of sec. 2845, of Code 1902, as not lessening or tending to lessen full and free competition to an unreasonable extent.

MR. JUSTICE GARY *dissents.*

MONOPOLIES defined, and rule stated for ascertaining if a combination, trust or monopoly is obnoxious to said statute.

*State v. Chemical Co., 71 S. C., 412, affirmed.*

Before MEMMINGER, J., Greenwood, October, 1905. Affirmed.

Action by Walter A. Wood Mowing and Reaping Co. against Greenwood Hardware Co. From order sustaining demurrer to part of answer, defendant appeals.

*Messrs. Sheppards, Grier & Park,* for appellant, cite: *Contract is void:* 71 S. C., 544; 193 U. S., 197; 24 Ency., 2 ed., 824, 853, 851; 24 U. S., 512; 6 Ency., 2 ed., 285. *Contract cannot be separated so that part can be enforced:* 20 S. C., 439; 197 U. S., 49 L. Ed., 763; 73 S. C., 1; 7 Ency., 95. *Defendant is not estopped from pleading the statute:* 20 S. C., 439; 46 Law Ed., 1067.

*Mr. Ellis G. Graydon* cites: *Contract is not illegal:* Code 1902, sec. 2845. *Matters of estoppel in pais may be available without being pleaded:* 8 Ency. P. & P., 6, 9; *Lites v. Addison,* 27 S. C. *This case is ruled by Packard v. Byrd,* 73 S. C., 1.

November 21, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal is from an order of Judge Memminger sustaining a demurrer to one of the defenses set up in the answer to plaintiff's first and third causes of action. The first cause of action was for certain mowers, hay rakes and sickle grinders sold and delivered to defendant January 26, 1904, under a written contract at prices aggregating seven hundred sixty-seven and 93-100 dollars, and the third cause of action was for mowers and rakes sold to defendant on September 12th and 19th, 1904, on its order, aggregating ninety-four dollars. The answer alleges that

the contract of sale was illegal and void, under section 2845, vol. 1, Code of Laws, prohibiting trusts and combinations in restraint of trade. In order that the facts admitted by the demurrer may accurately appear, we set out in full that part of the answer under consideration, as follows:

"a. That heretofore, to wit: on the 26th day of January, 1904, defendant and plaintiff entered into a written contract which was not to be complete until approved by the sales manager of the plaintiff and which was approved by said sales manager on February 10th, 1904, as will appear by reference to the said contract.

"b. That the said contract, among other things, contained the following provisions, to wit: That the plaintiff was to manufacture and sell unto defendant certain mowers, hay rakes and sickle grinders specified in the said contract, and provides that in case additional machines and parts of machines were subsequently ordered, same to be under the terms of the said contract and subject thereto, all to be imported into this State from the State of New York.

"c. The said contract also among other things contained the following provisions, as follows, to wit: 'Said first party agrees to use reasonable diligence to prevent other agents than said second party from interfering or making sales of machines covered by this agreement in said territory; but in no instance will said first party pay or allow any commission on a machine sold, other than to the party making the sale.' 'And the party of the second part agrees that we will canvass said territory thoroughly for purchasers of said machines and that we will not accept the agency for, or sell, any other mower, hay rake, tedder, reaper, harvester and binder, corn binder, or sickle grinder during the term of this contract.'

"d. And the said contract also further provides that all machines furnished under this contract shall be sold by the second party for use only in the territory named below, and in case of violation of these conditions the party of the first part shall have the right to refuse machines not delivered

and named as the territory GREENWOOD and vicinity. That the defendant herein is the party of the second part and plaintiff the party of the first part in said contract.

"5. That the goods alleged to be sold and shipped to this defendant by the plaintiff in the first and third causes of action herein were under the terms and provisions of this said contract, to which said contract reference is craved for a fuller statement of its said terms and conditions, and were imported into this State from the State of New York.

"6. That the said contract entered into by and between the plaintiff and defendant herein and under which the plaintiff agreed to sell and deliver to the defendant the goods which it alleges to have sold and delivered in the first and third causes of action of its said complaint, was made with a view to lessen full and free competition in the sale of articles imported into this State. the said articles having been imported into this State from the State of New York, and said contract so entered into was designed and tends to control the price of the said articles to the consumer of the same and affects the full and free competition in the sale of the said articles and in the price thereof, and the said contract is in direct violation of section 2845, vol. 1, Code of Laws of South Carolina, and is against public policy, unlawful and void, as declared by said statute.

"7. That all goods received by this defendant and which were sold and delivered to it by the said plaintiff, mentioned in the first and third causes of action in the complaint herein, were sold under and by virtue of the terms of the said contract as hereinabove alleged and as will more fully appear by reference to the said contract, which said contract is void as being in conflict with the provisions of the statute above mentioned, and the defendant alleges that plaintiff cannot maintain this action for the purchase price thereof."

We concur with the Circuit Court in holding that the contract is not obnoxious to section 2845. That section reads as follows: "All arrangements, contracts, agreements, trusts or combinations between two or more persons as in-

dividuals, firms or corporations, made with a view to lessen, or which tends to lessen, full and free competition in the importation or sale of articles imported into this State, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts or combinations between persons or corporations designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer, of any such product or article, and all arrangements, contracts, trusts, syndicates, associations or combinations between two or more persons as individuals, firms, corporations, syndicates or associations, that may lessen or affect in any manner the full and free competition in any tariff, rates, tolls, premium or prices, or seeks to control in any way or manner such tariffs, rates, tolls, premiums or prices in any branch of trade, business or commerce, are hereby declared to be against public policy, unlawful and void."

In the case of *State* v. *Chemical Co.,* 71 S. C., 544, 51 S. E., 455, this Court held that the statute must be construed as intending that the contract, etc., therein mentioned were unlawful and against public policy only when made with a view to lessen or which tend to lessen full and free competition to an unreasonable extent. We are asked to review that case, and after careful consideration we adhere to the principle announced. A construction of the statute which would make obnoxious every contract which tends in any measure to affect the cost or price of articles to the producer or consumer, or to lessen in any degree full and free competition, would probably render the statute liable to the objection that it unnecessarily and unreasonably abridges the freedom of contract guaranteed by the State and Federal Constitutions. It is true the right to make contracts is not absolute and unlimited, but is subject to valid police regulations having reasonable relation to the public welfare; but otherwise the right of contract must be unfettered. The construction adopted gives the statute valid operation, having due regard on one hand to the right of

contract and on the other to the police power.   The legis-
lative purpose was not to destroy the right to make those
contracts in partial restraint of trade which the just and
equitable principles of the common law had long upheld,
but it was to destroy trusts and combinations designed, or
having natural tendency, or potentiality, to create a virtual
monopoly.   The title of the original act of 1897, 22 Stat.,
438, and amendatory act of 1898, 22 Stat., 782, shows that
its purpose was "to prohibit trusts and combinations and
to provide penalties."   No doubt the act was passed in pur-
suance of sec. 13, art. 9, of the Constitution, which provides
that "the General Assembly shall enact laws to prevent all
trusts, combinations, contracts and agreements against the
public welfare, etc."

A monopoly, as now understood, "embraces any combina-
tion the tendency of which is to prevent competition in its
broad and general sense and to control prices to the detri-
ment of the public."   20 Ency. of Law, 846.   "A trust has
been defined as a contract, combination, confederation or
understanding, express or implied, between two or more per-
sons to control the price of a commodity or service for the
benefit of the parties thereto and to the injury of the public,
and which tends to create a monopoly.   More accurately,
perhaps it is, the entity resulting from the contract, etc., just
described."   20 Ency. Law, 846.   These are the contracts,
trusts and combinations, monopolistic in purpose, tendency
or potentiality, which the statute seeks to prohibit under
penalties.   In determining whether a particular contract
falls within the inhibition of the statute, the Court must
necessarily consider the tendency or power of the contract
to injure the public, either considered in itself or as part of a
scheme to destroy or impede competition and control supply
and prices.   A contract may be lawful in itself as an iso-
lated matter but yet be unlawful as a part of a scheme to
create a virtual monopoly.   The immediate effect of a trust
or combination may be really beneficial to the public in
improving the quality of the goods or service and reducing

the price, yet if it has inherent capability or natural tendency to injure the public, then competition is stifled and control of supply and prices secured, it is obnoxious to the statute.    Every case, however, alleged to fall within the statute must be controlled by its own peculiar facts and circumstances, and we will not attempt to state any hard and fast rule by which every case must be governed.    The main general test should be whether the contract, trust or combination is monopolistic in purpose or natural tendency.    If so, it unreasonably affects competition and prices to the detriment of the public and is obnoxious to the statute.

Before applying this principle to the case in hand, we eliminate from consideration whether the relation between plaintiff and defendant under the contract was one of principal and agent, for while the entire contract is not set out in the record for our consideration, the admitted allegations describing the contract characterize it as a contract of sale and purchase and not as an agency for sale on commission, and we so treat it in this consideration.    We are led to make this observation because of the statement in sub-division c, in paragraph 4, of the answer, which refers to "agents," "agency," and "commissions."    The rule is that contracts containing stipulations like those alleged to be illegal in this case, but which merely create an agency to sell on commission, are not in violation of law or anti-trust statutes.    We further eliminate from consideration the effect of such a contract as applied to an article under patent or copyright, as to which the government has already given a kind of monopoly to secure the fruits of which such contracts may be entirely lawful.    From the facts stated we cannot assume that the plaintiff has patent rights with respect to the mowers, rakes and sickle grinders in question.    The demurrer admits that the contract was between the plaintiff, a New York corporation, and the defendant, a South Carolina corporation, with respect to the sale of articles imported into this State, and that by the terms defendant bound itself to sell the articles for use only in Greenwood vicinity, to can-

vass the territory named for purchasers, and not to accept the agency for or sell other similar articles during the term of the contract; and the plaintiff bound itself to manufacture and sell said articles to defendant and to use reasonable diligence to prevent other agents from making sales of such machines in said territory. If we concede that the effect of this was an agreement by plaintiff to sell exclusively to defendant and by defendant to buy exclusively of plaintiff the articles in question in the territory of Greenwood and vicinity during the term of the contract, it is one of those minor contracts in partial restraint of plaintiff's right to freely sell and defendant's right to freely buy which the common law would hold to be reasonable as a fair protection of the mutual interests of the parties, and not injurious to the public as tending to create a monopoly. There is in this contract no combination among manufacturers of mowers, rakes and grinders to control the supply and prices of such machinery and no combination among dealers in such machinery to affect competition or prices, but it is the agreement of a single independent manufacturer and a single independent dealer and not monopolistic in its tendency. The contract leaves room for the keenest competition in that community by the manufacturers and dealers of similar implements. There is nothing in the complaint to show that defendant is the sole dealer in that kind of implement in that community or that the needs of the public could not be reasonably met by other dealers in similar implements.

But it is alleged in the answer that the contract was made with a view to lessen competition and designed to control the price and cost of said articles to the consumer. The demurrer admits this allegation as to the purpose of the contract, and this at first blush presents a difficulty in sustaining the demurrer. But as shown in *State* v. *Chemical Co.; supra,* an intent to affect competition and prices to a reasonable extent is not within the prohibition of the statute, and there is no allegation of fact in the answer to show that

25—75

competition and prices were intended to be affected to an unreasonable extent.

Having reached the conclusion that the contract in question is not violative of the statute, we should perhaps consider whether it is illegal under the common law and will do so briefly. Under the common law contracts in general restraint of trade are void, but contracts in partial restraint of trade are valid if reasonable and founded upon a valuable consideration. *Carroll* v. *Giles,* 30 S. C., 412, 19 S. E., 422. The test usually laid down by which to determine whether a contract in partial restraint of trade is reasonable is, "whether it affords only a fair protection to the interests of the party in whose favor it is made, without being so large in its operations as to interfere with the interests of the public." *McCurry* v. *Gibson* (Ala.), 54 A. M. St. Rep., 180; *Pacific Factor Co.* v. *Adler,* 25 Am. St. Rep., 102; *Trentman* v. *Wahrenburg,* 65 N. E. Rep., 1060. Applying this test, the contract is unquestionably valid under the common law.

Having reached the conclusion that the contract set up in the answer is not void, it becomes unnecessary to consider whether, if the contract be illegal, it is so divisible as that the legal may be separated from the illegal to enable plaintiff to recover the value of the goods sold and delivered to defendant thereunder, as held in *Packard* v. *Byrd,* 73 S. C., 1, in reference to a similar contract, nor is it necessary to consider whether the doctrine of estoppel has any application against ascertaining the invalidity of a contract void as against public policy.

The judgment of the Circuit Court is affirmed.

Mr. Justice Gary, *dissenting.* The following are the reasons why I do not concur in the opinion of Mr. Justice Jones:

The plaintiff agreed, (1) to manufacture and sell to the defendant, certain machines at prices specified in the contract; (2) that it would use reasonable diligence to prevent

other agents from interfering or making sales of machines covered by the contract, in the territory named as Greenwood and vicinity.

The defendant agreed, (1) to canvass said territory thoroughly, for purchasers of said property; (2) that it would not accept the agency for, or sell any other machines during the term of the contract; (3) that it would sell the said machines for use only in said territory.

The contract further provided, that in case of the violation of said conditions, the plaintiff should have the right to refuse to furnish machines not delivered.

Section 2845, of the Code of Laws, provides that "all arrangements, contracts, agreements, trusts, or combinations between two or more persons as individuals, firms, or corporations, made with a view to lessen, or which tend to lessen, full and free competition, in the importation or sale of articles imported into this State  *  *  *  and all arrangements, contracts, trusts, syndicates, associations, or combinations between two or more persons as individuals, firms, corporations, syndicates, or associations, that may lessen or affect, in any manner, the full and free competition, in any prices, etc., or seek to control, or in any way or manner, prices, etc., in any branch of trade, business, or commerce, are hereby declared to be against public policy, unlawful and void."

The statute came before the Court for construction, in the case of *State* v. *Chemical Co.,* 71 S. C., 544, 51 S. E., 455, and it was decided, that it must be interpreted, as intending that the contracts therein mentioned, are unlawful and against public policy only, when made with a view to lessen, or which tend to lessen full and free competition to an unreasonable extent. In logical order the first question for consideration is whether the contract herein was made with such a view. The fact that the plaintiff agreed to use reasonable diligence, to prevent other persons from selling machines in said territory; that the defendant agreed to canvass the territory thoroughly for purchasers of said

articles; that it would not sell any other machines than those purchased from the plaintiff, during the term of the contract; and that it would sell the machines, for use only in said territory, not only shows that the parties entered into the contract, with a view to lessen full and free competition to an unreasonable extent, but that it naturally tended to bring about such a result.

"Where a contract belongs to a class which is reprobated by public policy, it will be declared illegal, though in that particular instance, no actual injury may have resulted to the public, as the test is the evil tendency, and not its actual results." 15 Enc. of Law, 934.

Having reached the conclusion that the contract is obnoxious to section 2845, of the Code of Laws, the next question for consideration is, whether this case comes within the exception to the general rule, recognized in *Packard* v. *Byrd,* 73 S. C., 1, "Where the party complaining can exhibit his case, without relying upon the illegal transaction."

The policy of this State in regard to illegal contracts will be seen by reference to the following cases: *Lowry* v. *Pinson,* 2 Bailey, 324; *Mordecai* v. *Dawkins,* 9 Rich., 262; *Willis* v. *Hockaday,* 1 Spears, 379; *Harvin* v. *Weeks,* 11 Rich., 601; *Wallace* v. *Lark,* 12 S. C., 576; *McConnell* v. *Kitchens,* 20 S. C., 430; *Gist* v. *Tel. Co.,* 45 S. C., 363, 89, 23 S. E., 143; *Lanahan* v. *Bailey,* 53 S. C., 498; 31 S. E., 332; *Garvin* v. *Garvin,* 55 S. C., 560, 33 S. E., 458; *Pierson* v. *Green,* 69 S. C., 559; *State* v. *Robinson,* 70 S. C., 468, 50 S. E., 192.

These cases announce the general principles, that the Court will not lend its aid in the enforcement of an illegal contract; nor, when the contract is tainted with illegality, will it undertake to separate that which otherwise would be valid from the part which is contrary to law; nor will it suffer a recovery for the value of goods delivered in pursuance of a contract infected with illegality; nor permit a recovery for goods sold by a person, who not only knew that they were to be used in furtherance of an unlawful

scheme, but who actively participated in bringing about the contemplated result.    It thus appears that public policy demands, that the exception to the general rule, laid down in the case of *Packard* v. *Byrd,* 73 S. C., 1, should not be extended.

"Where a contract which is entire contains a stipulation or agreement which is illegal, and which, therefore, is not severable from the balance of the contract, such illegal stipulation or agreement can not be ignored, and the other provisions of the contract enforced; the illegal stipulation or agreement in such a case penetrates and corrupts the whole contract, and violates it as an entirety."    15 Enc. of Law, 988.    "If a promise to do several things or several distinct promises, although they be founded on a legal consideration, are indivisible, and one or more of the promises are illegal, the legal promise or promises cannot be enforced, but the whole agreement is void."    9 Cyc., 565-6.    "A contract may be said to be entire, when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions, and the consideration are common each to the other and inter-dependent.    A divisible contract is one, in its nature and purposes susceptible of division and apportionment, having two or more parts in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor intended by the parties to be so."    15 Enc. of Law, 988.

In the case of *Packard* v. *Byrd,* 73 S. C., 1, the Court said: "The parties by their course of dealing with each other, give some evidence of their intention, that payment for each bill of shoes sold and delivered, was not conditioned or dependent upon the performance by plaintiffs, of their agreement to give the defendant exclusive right to handle plaintiff's line of shoes in Greenwood, S. C."

In the case under consideration, there was no such evidence; on the contrary, it appears upon the face of the contract, that "it contemplates and intends that each and all of its parts, material provisions, and the consideration, are

·common to each other, and inter-dependent." This fact clearly appears from that portion of the contract, which provides that in case of violation of its conditions, the plaintiff should have the right to refuse to furnish machines. In other words, the furnishing of machines from time to time, was conditioned and dependent upon the performance by the defendant of its part of the contract; and, its promises were not made solely in consideration of the agreement on the part of the plaintiff, to furnish the machines, but upon the further agreement that it would use reasonable diligence to prevent other persons from interfering, or making sales of machines in said territory.

Under these circumstances the contract was not severable, and his Honor, the Circuit Judge, erred in sustaining the demurrer.