WYATT ENERGY, INC. *v.* MOTIVA ENTERPRISES,
LLC, ET AL.
(AC 25454)

Flynn, C. J., and DiPentima and Rogers, Js.

Argued December 4, 2006—officially released December 11, 2007

*Robert A. Izard, Jr.*, with whom were *Barbara F. Wolf* and *Mark P. Kindall*, for the appellant (plaintiff).

*Sheila A. Huddleston*, with whom was *Paul D. Sanson*, for the appellee (named defendant).

### Opinion

FLYNN, C. J. This case arises out of a decision by the plaintiff, Wyatt Energy, Inc. (Wyatt), to solicit purchasers for its New Haven gasoline distribution terminal in 1999. When it did so, Wyatt was in the second year of a ten year contract (terminalling agreement), in which Wyatt had granted to the defendants Shell Oil Company, Shell Oil Products Company, LLC, and Equiva Trading

Company, and later Shell's assignee, the defendant Motiva Enterprises, LLC (Motiva), certain exclusive and nonexclusive rights to the use of its New Haven deepwater terminal.[1] Williams Energy Services (Williams) made an offer to purchase the Wyatt terminal, but Motiva, as Shell's assignee, had a contractual right of first refusal to purchase. While the sale negotiations were pending between Wyatt and Williams, Motiva purchased a competing terminal facility located in New Haven from Cargill, Inc., and, subsequently, Motiva declined to purchase the Wyatt terminal. Wyatt later sold its terminal to Williams. Despite a contractual provision requiring it to do so, Wyatt did not make the sale of its terminal to Williams subject to Motiva's rights to use the terminal.

On appeal, Wyatt claims that the trial court improperly (1) tried Motiva's breach of contract counterclaim, which had become arbitrable when the court determined that count seven of Wyatt's complaint[2] was arbitrable, (2) granted Motiva's motion for summary judgment on Wyatt's illegality defense to Motiva's breach of contract counterclaim, (3) failed to consider extrinsic evidence and (4) awarded lost profits to Motiva. Although we disagree with Wyatt with respect to its first claim, we agree with Wyatt that the court improperly granted Motiva's motion for summary judgment. Accordingly, we reverse the judgment of the trial court. In light of our conclusion, we do not reach the remaining claims.

The following additional facts and procedural history are relevant to our resolution of Wyatt's appeal. On

---

[1] Although the answer, special defenses and counterclaim and the motion for summary judgment on Wyatt's special defenses to the counterclaim were filed on behalf of all of the defendants, judgment was rendered on the breach of contract counterclaim in favor of Motiva only. We therefore consider those pleadings as having been filed by Motiva.

[2] Count seven of Wyatt's complaint alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

June 23, 2000, Wyatt informed Motiva by letter that it was terminating the terminalling agreement, effective immediately. Wyatt then sold its terminal facility to Williams without requiring Williams to assume Wyatt's obligations to Motiva under the terminalling agreement. Following Motiva's receipt of Wyatt's termination letter, Motiva, in accordance with the arbitration provision of the terminalling agreement, delivered to Wyatt a demand for arbitration on or about July 6, 2000, alleging a breach of the agreement. Wyatt responded to the demand in August, 2000, by delivering a statement of arbitration defenses and counterclaims, but Wyatt withdrew this statement approximately one and one-half years later.

Thereafter, on July 23, 2002, Wyatt brought an action in the Superior Court, alleging claims for, inter alia, negligent misrepresentation, fraudulent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Connecticut Antitrust Act, General Statutes § 35-24 et seq. In response, Motiva filed an answer and various special defenses and a counterclaim to Wyatt's complaint, one count of which alleged a breach of contract.[3] Wyatt filed an answer and special defenses in reply to Motiva's counterclaim, including a special defense of illegality arising from Motiva's claimed antitrust violations. On August 29, 2003, Motiva moved for summary judgment on, inter alia, Wyatt's illegality defense, which the court granted on December 8, 2003. The summary judgment ruling on Wyatt's illegality defense, which foreclosed Wyatt

[3] Motiva's counterclaim alleged that Wyatt had breached the contract when, "[w]ithout proper cause, [it] unilaterally terminated the contract . . . [and] failed to comply with the notice and cause provision of the Terminalling Agreement." As a result of this breach, Motiva alleged, inter alia, that Wyatt, when it sold the facility to Williams, failed to assign its obligations to Motiva under the terminalling agreement to Williams.

from offering evidence at trial, is at the heart of this appeal.

Thereafter, the case was tried to the court, *Sheedy, J.,* on only Motiva's breach of contract counterclaim, and the court rendered judgment in favor of Motiva in the amount of $3,200,801, plus attorneys' fees of $891,224.98 and costs of $11,338.44. Wyatt appeals from that judgment. Additional facts will be set forth as necessary.

I

Wyatt first claims that it was improper for the court to try Motiva's breach of contract counterclaim because that counterclaim became arbitrable once the court determined that Wyatt's CUTPA claim was arbitrable. Motiva argues, in response, that Wyatt did not raise this issue properly before the trial court and, therefore, may not seek review of this issue on appeal. We agree with Motiva and decline to review the merits of Wyatt's claim.

As a threshold matter, we must address the issue of which law governs our resolution of Wyatt's claim. The terminalling agreement contained a choice of law provision, providing that the agreement would be construed and enforced in accordance with the laws of the state of Texas.[4] Although contractual clauses that "require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut"; (internal quotation marks omitted) *Zenon* v. *R. E. Yeagher Management Corp.*, 57 Conn. App. 316, 321, 748 A.2d 900 (2000); "procedural issues such as the applicable standard of review are governed by Connecticut law." *Montoya* v. *Montoya*, 280 Conn. 605, 612 n.7,

---

[4] Specifically, the terminalling agreement provided: "The Agreement shall be deemed to have been entered into in the State of Texas and the laws of the State of Texas shall be applicable in the construction of the terms and provisions hereof and in the determination of the rights and obligations of the parties hereunder."

909 A.2d 947 (2006). Guided by Connecticut law, we decline to review Wyatt's first claim, which was not raised in the trial court.

"We have stated repeatedly that we ordinarily will not review an issue that has not been properly raised before the trial court. See, e.g., *Santopietro* v. *New Haven*, 239 Conn. 207, 219–20, 682 A.2d 106 (1996) (court 'not required to consider any claim that was not properly preserved in the trial court'); *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (court declined to consider issues briefed on appeal but not raised at trial); see also Practice Book § 60-5 . . . ." *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000).

Our review of the record and briefs reveals that Wyatt failed to raise as an issue, at any time during the proceedings before the trial court, that the counterclaim became arbitrable once the court determined that the CUTPA count would be sent to arbitration. On February 5, 2004, the court sought clarification from the parties concerning which claims would be tried before the court. The court stated that it had determined previously that count seven of Wyatt's July 17, 2002 complaint, which alleged a violation of CUTPA, was arbitrable, and, consequently, count seven would not be litigated. This left counts five and six of Wyatt's complaint, as well as count one of Motiva's counterclaim and several special defenses raised by Wyatt in response to the counterclaim, excluding the special defenses that were disposed of in the December 8, 2003 summary judgment ruling. Wyatt, however, then withdrew counts five and six. Therefore, Motiva's breach of contract counterclaim was the sole claim to be tried before the court, along with the special defenses raised in response.[5]

---

[5] On September 27, 2002, the court deemed counts one through four of Wyatt's complaint arbitrable, but Wyatt later withdrew those claims from

Once all of this was sorted out, the court questioned the parties about whether they wanted a brief recess before proceeding with the trial. In response, counsel for Wyatt stated: "I'm prepared for [Motiva] to go forward, if they are ready to go, but if they would like a recess, it's fine with me." Wyatt did not object to proceeding with the trial on the counterclaim. Following a brief recess, the parties each gave opening statements, and the presentation of evidence commenced. Thereafter, Wyatt participated in the six day trial without voicing any objections to the litigation of the counterclaim.[6] Wyatt did not raise the issue before the court that the counterclaim became arbitrable once the court determined that Wyatt's CUTPA count would be arbitrated.

Moreover, in its reply brief, Wyatt does not attempt to defend against Motiva's assertion that Wyatt's claim was not preserved in the trial court. Instead, Wyatt merely asserts that "[a]t trial . . . [its] position was clear" that "the CUTPA and breach of contract counterclaim should be litigated in the same forum . . . ." Wyatt also argues that it "opposed arbitration of the otherwise arbitrable breach of contract counterclaim solely because it was inextricably intertwined with statutory claims and defenses that were not arbitrable . . . ."

Despite Wyatt's contention that "[its] position was clear," our review of the record reveals that Wyatt never once informed the court of its objection to proceeding with the trial on Motiva's counterclaim because of its belief that the counterclaim was arbitrable. Moreover,

arbitration. Count eight of Motiva's complaint was treated as a motion to enjoin arbitration. Counts two and three of Motiva's counterclaim were withdrawn in November, 2003.

[6] Wyatt also filed several motions after the court found in favor of Motiva on the counterclaim but failed to seek an articulation as to the basis for court's decision to try the breach of contract counterclaim.

Wyatt's argument that it opposed the arbitration of the otherwise arbitrable breach of contract counterclaim only because it believed that its CUTPA claim was to be litigated does not refute the fact that Wyatt's claim that the counterclaim should have been arbitrated was not made in the trial court. Even after the court stated that the CUTPA claim would be arbitrated on February 5, 2004, Wyatt did not inform the court of its opposition to the litigation of the counterclaim by arguing that the breach of contract claim also should be arbitrated. Accordingly, we conclude that Wyatt did not preserve the issue, and we decline to review it.

## II

We next consider Wyatt's claim that the court improperly concluded that Motiva was entitled to summary judgment as a matter of law on Wyatt's illegality defense.[7] We agree with Wyatt.[8]

---

[7] In this appeal, Wyatt does not claim that the trial court improperly granted Motiva's motion for summary judgment on Wyatt's special defense on the ground that summary judgment is not a proper vehicle for eliminating a special defense, where judgment is not rendered on either a complaint or a counterclaim as a result of the rejection of the special defense. We note, however, that "[a]lthough there is no appellate authority, [t]he decisions of the Connecticut Superior Court are almost in unanimous agreement that a motion for summary judgment as [a means to eliminate] a special defense is improper." (Internal quotation marks omitted.) *Banerjee* v. *Foster*, Superior Court, judicial district of Fairfield, Docket No. CV-04-0410456-S (March 5, 2007) (43 Conn. L. Rptr. 42). Because this procedural aspect is not addressed by either party, we will proceed to review Wyatt's substantive claim on appeal.

[8] On appeal, Motiva argues that the interposition of an illegality defense based on antitrust violations in a breach of contract action is disfavored by the federal courts, citing *Kelly* v. *Kosuga*, 358 U.S. 516, 79 S. Ct. 429, 3 L. Ed. 2d 475 (1959). The *Kelly* case is distinguishable from the factual setting of the present case. *Kelly* involved a contract for the sale of onions, which the purchaser had received but had not paid for. Id., 516–17. The purchaser interposed the seller's antitrust violations as a defense to payment. Id., 516. The *Kelly* court would not consider the defense where the purchaser had received the goods, noting that "[p]ast the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the [Sherman Antitrust Act, 15 U.S.C. § 1 et seq.], the courts are to be guided

We begin our analysis by reviewing the procedural history relevant to this claim. In response to Motiva's breach of contract counterclaim, Wyatt, in its second special defense, alleged that the terminalling contract was illegal. Specifically, Wyatt pleaded that "[Motiva's] counterclaims are barred by the illegality of the Terminalling Agreement. Motiva's exclusive control over the Wyatt terminal pursuant to the Terminalling Agreement was a necessary and key part of [Motiva's] conspiracy to monopolize, attempt to monopolize and actual monopolization of the Western New England market as defined in Wyatt's complaint. Once Motiva had exclusive control over the Wyatt terminal, it was able to achieve monopolization by purchasing the Cargill terminal, and the Terminalling Agreement became violative of the Connecticut Antitrust Act, [General Statutes] §§ 35-26, 35-27 and 35-29, and the Connecticut Unfair Trade Practices Act, [General Statutes] § 42-110b

by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' *Continental Wall Paper Co.* v. *Louis Voight & Sons Co.*, [212 U.S. 227, 271, 29 S. Ct. 280, 53 L. Ed. 486 (1909) (Holmes, J. dissenting)]." *Kelly* v. *Kosuga*, supra, 520–21.

The present case does not involve a contract for the sale of goods but rather a contract that grants Motiva exclusive marketing rights to put gasoline through the Wyatt terminal and contains an endeavor clause, in which Motiva agreed that it would endeavor to keep the rates at the Wyatt terminal the same as at another terminal Motiva owned in Bridgeport. See footnote 11. Unlike *Kelly*, no benefit would continue to accrue to Wyatt upon the termination of the contract. Accordingly, we are not persuaded by Motiva's argument. We cannot find any case law indicating that Connecticut would adopt such a position in this case with regard to alleged violations of the Connecticut Antitrust Act.

Our review of Texas law reveals that Texas has not adopted the position of the federal courts. Rather, according to Texas law, an antitrust defense can be interposed. See, e.g., *Savin Corp.* v. *Copy Distributing Co.*, 716 S.W.2d 690, 691 (Tex. Civ. App. 1986); *Federal Parts Corp.* v. *Robert Bosch Corp.*, 604 S.W.2d 367, 370 (Tex. Civ. App. 1980, writ ref'd n.r.e.) ("[A] contract or transaction in violation of the antitrust statutes is void and unenforceable. . . . Accordingly, [the defendant] was entitled to proceed on its affirmative defense on the legal theory of antitrust violations committed by [the plaintiff].").

('CUTPA'). The Terminalling Agreement is therefore illegal, void and unenforceable."[9]

On December 8, 2003, the court granted Motiva's motion for summary judgment as to Wyatt's special defense of illegality, ruling that "under both Texas and Connecticut law, the illegality defense fails as a matter of law. The contract did not require a violation of law and was capable of execution without violating the law. See *Corporate Leasing International, Inc.* v. *Groves*, 925 S.W.2d 734, 738 (Tex. Civ. App. 1996) . . . ." (Citation omitted.) The case later proceeded to a trial by the court on Motiva's counterclaim, but because of the court's entry of summary judgment as to the special defense, Wyatt was barred from presenting evidence that the contract was illegal.

Under Connecticut law, the standard of review of a trial court's decision to grant a motion for summary judgment is well established. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore,

---

[9] In its appellate brief, Wyatt addresses the portion of its illegality defense concerning Connecticut antitrust violations, and, therefore, we also only address the Connecticut Antitrust Act.

In its special defense, Wyatt alleged, inter alia, violations of General Statutes §§ 35-26, 35-27 and 35-29 of the Connecticut Antitrust Act. Section 35-26 provides that "[e]very contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful." General Statutes § 35-26. Section 35-27 provides that "[e]very contract, combination, or conspiracy to monopolize, or attempt to monopolize, or monopolization of any part of trade or commerce is unlawful." General Statutes § 35-27.

entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, 277 Conn. 21, 30–31, 889 A.2d 785 (2006). Further, because this appeal involves the applicability of the doctrine of contract illegality, which presents "a question of law for the court, to be determined from all the facts and circumstances of each case," it is subject to plenary review. (Internal quotation marks omitted.) *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 245, 866 A.2d 629 (2005).

Before addressing the merits of Wyatt's claim, we must first determine which state's law is applicable to the determination of the existence of illegality. In its summary judgment ruling, the court determined that Wyatt's illegality defense failed as a matter of law under both Connecticut and Texas law. We conclude that the court, rather than referring to Texas law, should have applied only Connecticut law when determining whether illegality in fact did exist in this particular case.[10]

In reaching this conclusion, we find support in comment (c) of § 202 of the Restatement (Second) of Conflict of Laws, which explains that "the legality or illegality of performance under a contract is usually determined by the local law of the state where this

[10] To the extent that Motiva argues that the law of the chosen state is applicable, citing *Zenon* v. *R. E. Yeagher Management Corp.*, supra, 57 Conn. App. 316, we find that case to be inapposite. First, we note that *Zenon* concerns the law to be applied in determining the *enforceability* of an illegal contract and not the law to be applied in determining, as a threshold matter, the existence of illegality. Id., 328–29; 1 Restatement (Second), Conflict of Laws § 202, comment (c), p. 645 (1971). In addition, the parties in that case agreed that Massachusetts law applied to the plaintiff's claim for nonpayment of a promissory note, which was a part of an illegal arrangement to avoid Massachusetts' liquor licensing laws for a property located in Massachusetts. *Zenon* v. *R. E. Yeagher Management Corp.*, supra, 318–21.

performance either has taken, or is to take, place." 1 Restatement (Second), Conflict of Laws § 202, comment (c), pp. 645–46 (1971). According to comment (c) of § 202, "[w]hen the validity of a contract is attacked on the ground of illegality, the forum will first decide whether illegality does in fact exist by reference to the appropriate law, which . . . is usually the local law of the state where the act in question either has been, or is to be, done." Id., § 202, comment (c), p. 646; see also E. Scoles, P. Hay, P. Borchers & S. Symeonides, Conflict of Laws (4th Ed. 2004) § 18.39, p. 1035 (noting that Restatement (Second), Conflict of Laws § 202 "provides for primary reference to the law of the place of performance in circumstances where performance is illegal there"). Because the terminalling agreement concerned putting gasoline through the Wyatt terminal in New Haven, we conclude that Connecticut law is the appropriate law to determine whether the Connecticut Antitrust Act was violated. See id.; see also *Korea Life Ins. Co., Ltd.* v. *Morgan Guaranty Trust Co. of New York*, 269 F. Sup. 2d 424, 438, 440 (S.D.N.Y. 2003) (court applied Korean law to determine existence of illegality of contract containing New York choice of law provision where Korea was place of performance); see generally *Lehman Bros. Commercial Corp.* v. *Minmetals International Non-Ferrous Metals Trading Co.*, 179 F. Sup. 2d 118 (S.D.N.Y. 2000).

Having determined the applicability of Connecticut law to the threshold inquiry into the existence of illegality, we now turn to the court's decision on Motiva's motion for summary judgment. Because part of the court's ruling was an incorrect statement of the law as applied to the circumstances of the case, we conclude that the court improperly rendered summary judgment in favor of Motiva on Wyatt's special defense of illegality.

We first review the part of the court's ruling on the summary judgment motion that held that the terminalling agreement did not require a violation of the law. After examining the contractual language of the terminalling agreement, we conclude that the agreement on its face does not require a violation of the law. At least at the time of the formation of the contract, we see nothing in the language of the agreement requiring a violation of any law, nor does Wyatt refer us to any.

We next examine the court's ruling that the illegality defense failed as a matter of law because the agreement was capable of execution without violating the law. Motiva contends in its appellate brief, as it did in its motion for summary judgment, that the terminalling agreement was capable of being performed without violating the law because the lawfulness of a contract is determined by looking only to the time of its formation. In granting Motiva's motion for summary judgment and in rejecting Wyatt's illegality defense, the court stated, in relevant part, that the contract was capable of execution without violating the law. The court evidently reached this conclusion because it implicitly agreed with Motiva's statement of the law that the legality of a contract is determined by looking only to the time of its formation, and, therefore, we construe the court's ruling as such. We, however, do not agree that the court's conclusion was proper under the circumstances of this case.

We are cognizant of the general rule that the unlawfulness of a contract "is *usually* determined as of the time of its making and is not affected by subsequent changes of facts." (Emphasis added.) 17A C.J.S. 147, Contracts § 197 (1999); see also *12 Havemeyer Place Co., LLC* v. *Gordon*, 76 Conn. App. 377, 390, 820 A.2d 299, cert. denied, 264 Conn. 919, 828 A.2d 618 (2003). However, under the circumstances of the present case,

in which antitrust violations are alleged, we conclude that, contrary to Motiva's contention and to the general rule, the legality of the terminalling agreement and the determination concerning its capability of being performed lawfully cannot be ascertained by looking only to the time of its formation.

In reaching our conclusion that it was improper for the court to conclude that the terminalling agreement was capable of being performed lawfully as a matter of law and that a determination as to the lawfulness of the agreement is made by examining it only at its formation, we are guided by Connecticut antitrust statutes, as well as case law involving antitrust violations. The Connecticut Antitrust Act is a legislative enactment that expresses a broad public policy of promoting competition in the marketplace and prohibiting unreasonable restraints on trade, monopolies and attempts to monopolize a defined market area. See General Statutes §§ 35-26 and 35-27; *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 72, 793 A.2d 1048 (2002). Assessing the legality of a contract only at the time of its formation, however, would undermine the policies behind the antitrust statutes, which make a wide array of conduct and practices unlawful.

Control over a given market area need not arise from only one contract or acquisition. See generally *Walter A. Wood Mowing & Reaping Co.* v. *Greenwood Hardware Co.*, 75 S.C. 378, 383, 55 S.E. 973 (1906) ("In determining whether a particular contract falls within the inhibition of the [antitrust] statute, the Court must necessarily consider the tendency or power of the contract to injure the public, either considered in itself or as part of a scheme to destroy or impede competition and control supply and prices. A contract may be lawful in itself as an isolated matter but yet be unlawful as a part of a scheme to create a virtual monopoly."). On the contrary, the more likely scenario is that such illicit

control results from a series of contracts or acquisitions which, at some point in the progression, cause one party to possess an unreasonable power over a defined market. See id. Thus, a contract, that provides for exclusive marketing rights over a certain terminal, might not violate the antitrust laws at the time of its formation.[11] That initial contract, however, arguably could become violative of those same laws when one of the contracting parties later gains unlawful dominance and control by the purchase of a competing facility within the same market. See generally *X.L.O. Concrete Corp.* v. *Rivergate Corp.*, 83 N.Y.2d 513, 518, 634 N.E.2d 158, 611 N.Y.S.2d 786 (1994) (noting that contract, which was legal on its face and did not require conduct in violation of antitrust laws, could be related to arrangement or combination in restraint of competition such that its performance would result in conduct prohibited by antitrust laws). Such an accretion of market power, subsequent to the formation of the first contract, is the evil that the antitrust laws prohibit. We find nothing in the statutes or relevant case law that would insulate the contracting parties from the later applicability of the antitrust laws simply because the accretion of power is made possible by a series of acquisitions or contracts.

Although we conclude for the foregoing reasons that the court improperly granted Motiva's motion for summary judgment as a matter of law, we also agree with Wyatt's contention in its appellate brief that "[g]enuine issues of fact exist . . . ." Specifically, genuine issues

---

[11] The exclusivity provision of the terminalling agreement provided in relevant part: "Wyatt agrees that at any time during the term of this Agreement, all current or future gasoline truck loading racks within the Facility or any other facility obtained by purchase or lease by Wyatt or its affiliates located in New Haven, [Connecticut] shall be dedicated for use by [Motiva] or its Customers."

The terminalling agreement also provided that Motiva would "endeavor" to keep rates the same at the Wyatt terminal as in the Bridgeport terminal, which Motiva also owned.

of fact exist between the parties concerning whether the terminalling agreement is related to an unlawful arrangement or combination in restraint of competition. See generally id. Wyatt was entitled to show that there was a relevant market. See *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 814, 873 A.2d 965 (2005) ("[P]roper analysis in an antitrust case first requires determination of the relevant market . . . . Market definition generally is a deeply fact intensive inquiry . . . ." [Citations omitted; internal quotation marks omitted.]). Wyatt also was entitled to show that Motiva had monopolized or attempted to monopolize it by the later acquisition of the competing Cargill terminal and that compliance with the terminalling agreement would have been violative of Connecticut's antitrust law. See General Statutes § 35-27. The parties were not in agreement about whether there was a relevant market and whether the Cargill acquisition, in light of Motiva's control of other similar facilities, gave Motiva monopoly dominance over the relevant market, as the reams of depositions and other documents addressing those issues in this case attest. Wyatt, therefore, was entitled to have a finder of fact determine those disputed issues before the court decided that Wyatt could not offer evidence about its special defense to the breach of contract counterclaim.[12] Accordingly, we conclude that the trial court improperly rendered summary judgment as a matter of law in favor of Motiva on Wyatt's illegality defense.

---

[12] A fact finder could conclude that the exclusive rights granted to Motiva to put gasoline through the Wyatt terminal and the language in the agreement, stating that Motiva would endeavor to keep rates the same at the Wyatt terminal as at the Bridgeport terminal did not violate antitrust laws. However, in light of the factual disputes between the parties, a fact finder could conclude that, with the later acquisition of the Cargill terminal, the terminalling agreement between Wyatt and Motiva contributed to antitrust violations. Wyatt, accordingly, had an interest in being able to put on that defense at trial because, as a party to a contract that created such a potentially violative combination, it might have exposure under our antitrust laws.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.