UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty.

PRESENT:
> RICHARD C. WESLEY,
> SUSAN L. CARNEY,
> STEVEN J. MENASHI,
> *Circuit Judges.*

―――――――――――――――――――――――――――――――――――

IN RE: LISA V. ELWELL,

> *Debtor.*

―――――――――――――――――――――――――――――――――――

LISA V. ELWELL,

> *Plaintiff-Appellant,*

v.                                                                    No. 19-3039

JP MORGAN CHASE BANK NA,

> *Defendant-Appellee.*

―――――――――――――――――――――――――――――――――――

FOR PLAINTIFF-APPELLANT:              J. CHRISTOPHER ROONEY (Drew J.
                                                            Cunningham, *on the brief*), Carmody

Torrance Sandak & Hennessey LLP, New Haven, CT.

FOR DEFENDANT-APPELLEE: BRIAN D. RICH (Logan A. Carducci, *on the brief*), Halloran & Sage LLP, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Thompson, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 23, 2019, is **AFFIRMED**.

Plaintiff-Appellant Lisa V. Elwell ("Lisa") appeals from summary judgment granted by the United States District Court for the District of Connecticut (Thompson, *J.*) in favor of Defendant-Appellee JP Morgan Chase Bank, N.A. ("JP Morgan" or "the bank"). The District Court held that JP Morgan is entitled to pursue its proof of claim in Lisa's underlying bankruptcy action and dismissed her Connecticut Unfair Trade Practices Act ("CUTPA") cause of action. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In 2002, Lisa and her then-husband John C. Elwell ("John") purchased a piece of real property in the Town of Darien, Connecticut (the "Property"), acquiring the Property as joint tenants with the right of survivorship. As relevant here, in January 2006, John entered into a home equity line-of-credit agreement with JP Morgan, under which JP Morgan provided a $300,000 line of credit (the "Note"), secured by a mortgage on the Property (the "Mortgage"). The Note and Mortgage appeared to have been signed by both Lisa and John but, as John later conceded and as no one disputes, John forged Lisa's signature on both documents. Additionally, the signatures of the witnesses to the Mortgage document appear to have been "whited-out" at some point, although how and why is unclear. App'x 106.

It was not until 2015 that Lisa learned that her signature had been affixed to the Note and the Mortgage. After the forgery came to light, Lisa's attorney informed JP Morgan by

letter that Lisa "did not sign either" the Note or the Mortgage and declared that both documents were "invalid as to her." App'x 38-39. Also in that time period, Lisa and John initiated divorce proceedings. In October 2016, the Connecticut Superior Court adopted a judgment jointly stipulated by Lisa and John. The judgment finalized their divorce and provided for distribution of their marital assets. Under its terms, John quitclaimed his interest in the Property to Lisa, who then became the Property's sole owner.[1]

A little over a year later, in November 2017, Lisa filed for bankruptcy. JP Morgan filed a proof of claim in the bankruptcy action, seeking to recover approximately $350,000 on the Mortgage and the Note based on John's interest in the Property, which had been transferred to Lisa.[2] Lisa then sued the bank in an adversary action in the District Court, challenging the validity of JP Morgan's proof of claim and asserting an affirmative cause of action against the bank under CUTPA.[3]

At summary judgment, the District Court concluded that the Note and Mortgage "were binding against John," and that Lisa held "the interest formerly held by John . . . , which is encumbered by the 2006 Mortgage." App'x 112, 114. Thus, it allowed JP Morgan's proof of claim to the extent of John's indebtedness, but only as "to the interest in the Property quitclaimed to Lisa." App'x 115. The District Court further concluded that JP Morgan's "valid mortgage on the Property with respect to the interest in the Property quitclaimed by John" meant that the bank's collection efforts were not unfair or deceptive trade practices under CUTPA. App'x 117-18. It is these rulings that Lisa now challenges on appeal.

---

[1] Also pursuant to the divorce decree, Lisa and John each assumed responsibility for half of a $75,000 line of credit that JP Morgan extended in 2003, which Lisa and John secured by a mortgage on the Property. Lisa does not dispute the authenticity of her signature on that 2003 note and mortgage nor the fact that she is liable thereunder.

[2] At Lisa's request, JP Morgan had in the interim investigated her forgery allegations. When that investigation validated the charges, the bank removed Lisa's name and social security number from the Note and the Mortgage. It also removed those liabilities from Lisa's credit report.

[3] Lisa's complaint also included a cause of action for slander of title. The District Court dismissed that claim on statute of limitations grounds, and Lisa does not challenge that ruling on appeal.

3

We review *de novo* "a district court's grant of summary judgment," and "constru[e] all evidence in the light most favorable to the non-moving party." *Hubbs v. Suffolk Cty Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). For substantially the same reasons as are set forth in its methodical opinion, we agree with the District Court that, under Connecticut law, John's signature on the Note and Mortgage created a valid mortgage on the Property to the extent of his interest in the Property, notwithstanding his forgery on the same documents of Lisa's signature.[4]

Section 47-14e of the Connecticut General Statutes provides that one joint tenant may encumber his own interest in a property, including by mortgaging that interest, without severing the joint tenancy. Thus:

> A mortgage or lease executed by all of the joint tenants does not sever the joint tenancy but is valid according to its terms against the joint tenants and the survivor or survivors of them. A mortgage or lease executed by less than all of the joint tenants is a severance only to the extent that, upon the death of any joint tenant joining in the mortgage or lease, the mortgage or lease will continue to encumber the interest accruing to the surviving joint tenant or tenants by reason of that death.

Conn. Gen. Stat. § 47-14e; *see Bank of Am., N.A. v. Bertocki*, No. HHDCV095025960, 2012 WL 2335280, at *3 (Conn. Super. Ct. May 22, 2012) ("Simply because . . . [one of two joint tenants] had an interest in the property, does not require that [that joint tenant] was a party to the mortgage. In fact, our legislature has contemplated the circumstance in which one joint tenant gives a mortgage for his interest in the property, without binding another joint

---

[4] The District Court applied Connecticut law, *see* App'x 111-15, and neither party disputes that Connecticut law properly applies. *See, e.g.*, *Wyatt Energy, Inc. v. Motiva Enters., LLC*, 936 A.2d 280, 287-88 (Conn. App. Ct. 2007) (explaining that where validity of a contract is attacked, courts typically apply "the local law of the state where the act in question either has been, or is to be, done" (internal quotation marks omitted)). Though Appellant notes in her reply brief that, because John forged the Mortgage in New York, New York law might apply, *see* Appellant's Reply Br. 5, she fails to provide a compelling reason why we should depart from the proposition she advances in her opening brief that, because John recorded the deed in Connecticut, "the law of Connecticut should apply to the construction and interpretation of the mortgage," Appellant's Br. 10-11 n.1. Nor, for that matter, does the New York law Appellant cites support the relief she seeks in this case.

4

tenant.").[5] That John actually signed the Mortgage and Note is uncontested. We therefore conclude, as did the District Court, that under Connecticut law the Mortgage and Note were binding as to John and encumbered his interest in the Property.[6] When John quitclaimed his encumbered interest to Lisa, she acquired it subject to the encumbrance, even if the loan documents were void as to her and the interest in the Property that she already held.

Lisa argues that the forgery perpetrated by John rendered both the Mortgage and Note entirely void, including as to John. But Section 47-14e of the Connecticut General Statutes dictates the opposite result by establishing that an encumbrance on a property may be effected by fewer than all joint tenants. The authority Lisa cites for her contrary position is inapposite because, in each case, the *only* purportedly binding signature on the document determined to be void was forged. *See Smith v. Smith*, 438 A.2d 842, 842-43 (Conn. 1981) (affirming trial court's conclusion that deed was "a forgery, void and not binding upon the plaintiff" where plaintiff alleged that defendant "forged or caused to be forged" plaintiff's signature on deed that "conveyed to the defendant ownership of [plaintiff's] real property" and plaintiff's signature was only signature on deed); *Cook v. Beiluch*, 629 A.2d 1175, 1177-79, 1181-83 (Conn. App. Ct. 1993) (discussing deed "purporting to convey a one-half interest in the property . . . from the plaintiff to the defendant," where "plaintiff testified that she had not executed the deed and that the signature on the deed purporting to be hers was a forgery"), *overruled on other grounds by Kaczynski v. Kaczynski*, 981 A.2d 1068 (Conn. 2009); *see also Faison v. Lewis*, 25 N.Y.3d 220, 222-31 (2015) (finding deed that "conveyed [a father's] half-interest in . . . real property to [his daughter]" to be entirely void under New York law where the "father's signature was a forgery"). As a result, we affirm the District Court's

[5] To be clear, our decision is limited to the issue of JPMorgan's proof of claim in the bankruptcy. In other words, we decide only whether the Mortgage is valid against John's interest in the Property notwithstanding the forgery of Lisa's signature. We do not opine on whether—considering *Bertocki*, 2012 WL 2335280, at *5, and the equitable considerations involved— JPMorgan could later foreclose on John's encumbered interest in the Property, which Lisa now holds.

[6] Notably, this is the position that Lisa initially took with JP Morgan. *See* App'x 38-39.

ruling that JP Morgan may pursue its proof of claim "to the extent of John Elwell's indebtedness." App'x 115.

Lisa also contends that the District Court committed legal error when it rejected her argument that the Mortgage is void because the witness signatures were "obscured through an act of forgery." Appellant's Br. 16. We disagree. Although Connecticut law requires that a mortgage be attested to by two witnesses, it also establishes a two-year statute of limitations on claims attacking the validity of a mortgage for failure to comply with that requirement: section 47-36aa(a)(2) of the Connecticut General Statutes provides that a mortgage "attested by one witness only or by no witnesses" is nevertheless "valid as if it had been executed without the defect or omission" if no "action challenging the validity of that instrument is commenced . . . within two years after the instrument is recorded." The Mortgage in question here was recorded on January 30, 2006, and no action challenging its validity was begun within two years of that date: Lisa filed her adversary action in 2018. Thus, we agree with the District Court that the obliteration of what appears to have been witness signatures—whatever the reason for that obliteration may be—provides no basis to invalidate the Mortgage now.[7]

Turning finally to Lisa's CUTPA claim, section 42-110b(a) of the Connecticut General Statutes provides that "[n]o person shall engage in . . . unfair or deceptive acts . . . in the conduct of any trade or commerce." Since we have determined that JP Morgan holds a valid mortgage on what was once John's interest in the Property, we easily conclude that, contrary to Lisa's allegations, the bank's efforts to enforce the terms of the Mortgage were not unlawful and do not constitute "unfair or deceptive acts" under state law.

---

[7] To the extent that Lisa argues that section 47-36aa does not apply to her claim because the witness names "were not omitted" but rather were "covered . . . up," Appellant's Br. 17, she cites no persuasive state authority, and we are not convinced. Connecticut courts have not applied the statute so narrowly. *See Wells Fargo Bank, N.A. v. Fratarcangeli*, 217 A.3d 649, 654 (Conn. App. Ct. 2019) (holding that "§ 47-36aa(a) applies to cure an attesting witness defect or omission [even] in the context of an allegation of fraud in the execution of a mortgage deed"); *CitiMortgage, Inc. v. Partch*, No. FSTCV136017689S, 2017 WL 951022, at *2-4 (Conn. Super. Ct. Feb. 1, 2017) (explaining that section 47-36aa(a) could cure "claimed defect" that signatures of notarizing officials were "forged or robo-signed or signed by surrogate signers").

\* \* \*

For the reasons set forth above, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court